**UNITED GAS PIPELINE COMPANY,**
**Plaintiff,**

v.

**TERREBONNE PARISH POLICE JURY,**
**Defendant.**

**Civ. A. No. 70–1968.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Oct. 19, 1970.

Frank W. Wurzlow, Jr., of Ellender, Wright & Wurzlow, Houma, La., and Ray A. Barlow, of Hargrove, Guyton, Van Hook & Ramey, Shreveport, La., for plaintiff.

Wilmore J. Broussard, Jr., Dist. Atty., Bernard L. Knobloch, First Asst. Dist. Atty., Terrebonne Parish Police Jury, for defendant.

COMISKEY, District Judge.

United Gas Pipeline Company [United] wishes to construct a 4-inch natural gas transmission pipeline in Terrebonne Parish. It is to connect United's existing 6-inch interstate natural gas pipeline to the Fundamental Oil Corp. et al. No. 1 wellhead, a distance of approximately 1,889 feet. The Terrebone Parish Police Jury [Police Jury] required as a condition precedent to the issuing of a building permit that United comply with Ordinance No. 1682 and further that United alter, relocate or remove the pipeline if required by any future parish public improvement. United refused.

After a trial on the merits, this Court issued a Memorandum of Reasons on September 15, 1970. (See Appendix A) It was held that the requirement obligating United to alter, relocate or remove the proposed pipeline at its sole expense in the future for any parish public improvements was an unconstitutional taking of property in violation of the due process clause of the Fourteenth Amendment. Therefore, this requirement could not serve as a condition precedent to the issuance of a permit to build the proposed pipeline. Otherwise, it was also held that United should comply with Ordinance No. 1682.

Ordinance No. 1682 is "[a]n ordinance regulating the construction, installation and operation of gas or liquid petroleum pipelines or canals in Terrebonne Parish, and providing for specifications, reports, permits, insurance, fees, and providing penalties for violation thereof." [1] United contended that Ordinance No. 1682 was invalid on the following several grounds: 1) The area of construction, installation and operation of gas pipeline is preempted by federal law (49 U.S.C.A. § 1671 et seq.); 2) The ordinance is an undue burden on interstate commerce; and 3) The police jury lacks authority under state law to adopt such an ordinance. In its original Memorandum of Reasons, the Court declined to recognize these contentions.

United moved for a new trial. On October 7, 1970, the Court heard argument on the motion, which by agreement, was limited to the issue of preemption. It is now this Court's position that the Federal Act (49 U.S.C.A. § 1671 et seq.) known as the "Natural Gas Pipeline Safety Act of 1968" [Safety Act] has entered the field of "design, installation, inspection, testing, construction, extension, operation, replacement and maintenance of pipeline facilities" (49 U.S.C.A. § 1671). Penalties for violation thereof are likewise prescribed (49 U.S.C.A. § 1678). As applied to interstate transmission pipelines, the Safety Act must prevail over and pre-empt any state or state political subdivision law, ordinance or similar mandate.

The parties have jointly stipulated that the proposed "4-inch natural gas transmission pipeline is to be used in interstate commerce and subject to the regulations and control of the Federal Power Commission provided by Congress under the Natural Gas Act, 15 U.S.C.A. § 717 et seq." [2] Although a traditional

---

1. The entire ordinance is reproduced and contained at the end of the September 15, 1970 Memorandum of Reasons as Appendix 1.

2. Paragraph 7 of joint stipulation.

line of demarcation was preservred between federal and state regulatory responsibilities in the natural gas industry,[3] this act made it clear that the interstate transportation and sale of natural gas was under its exclusive jurisdiction.[4]

██ Just as Congress intended by the Natural Gas Act to confer exclusive jurisdiction to the Federal Power Commission to regulate commerce in the interstate sale and transportation of natural gas, so also it intended by the Natural Gas Pipeline Safety Act of 1968 to give exclusive jurisdiction to the Department of Transportation to regulate the safety of "interstate transmission facilities."[5] The legislative history of the Saftey Act makes it clear that Congress intended to avoid dual safety regulation of interstate transmission facilities:

"The relationship of Federal-State regulatory authority created by this bill differs as between local pipelines and interstate transmission lines. In the latter area, the lines of a single transmission company may traverse a number of States and uniformity of regulation is a desirable objective. For this reason, section 3 provides for a Federal preemption in the case of interstate transmission lines.

"On the other hand, in the case of local lines exempted from the economic regulatory authority of the Federal Power Commission under the Natural Gas Act, States may establish additional or more stringent standards, provided they are not inconsistent with the Federal minimum standards. The committee has provided for this different treatment because each State authority is uniquely equipped to know best the special aspects of local pipeline safety which are particularly applicable to that community." 3 U.S. Cong.Admin.News, 1968 at page 3241.[6]

The requirements of the Natural Gas Act of a Certificate of Public Convenience and Necessity and the delegation of the power of eminent domain to build the proposed pipeline lend emphasis to the proposition that Congress has preempted the field; See for example Transcontinental Gas Pipe Line Corp. v. Borough of Milltown, 93 F.Supp. 287 (D.N.J.1950) and New York State Natural Gas Corporation v. Town of Elma, 182 F.Supp. 1 (W.D.N.Y.1960). Further support is found in that part of the

---

3. (c) The provisions of this chapter shall not apply to any person engaged in or legally authorized to engage in the transportation in interstate commerce or the sale in interstate commerce for resale, of natural gas received by such person from another person within or at the boundary of a state if all the natural gas so received is ultimately consumed within such state, or to any facilities used by such person for such transportation or sale, provided that the rates and service of such person and facilities be subject to regulation by a state commission. The matter exempted from the provisions of this chapter by this subsection are declared to be matters primarily of local concern and subject to regulation by the several states. A certification from such state commission to the Federal Power Commission that such state commission has regulatory jurisdiction over rates and service of such person and facilities and is exercising such jurisdiction shall constitute conclusive evidence of such regulatory power or jurisdiction.

4. (a) As disclosed in reports of the Federal Trade Commission made pursuant to S.Res. 83 (Seventieth Congress, first session) and other reports made pursuant to the authority of Congress, it is declared that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign and commerce is necessary in the public interest.

5. "Interstate transmission facilities" means pipeline facilities used in the transportation of gas which are subject to the jurisdiction of the Federal Power Commission under the Natural Gas Act; Section 1671 (8) of the Safety Act.

6. See also the article entitled "The Natural Gas Pipeline Safety Act of 1968" Natural Resources Lawyer, (Vol. II) Number 2 May 1, 1969, page 142.

Safety Act (§ 1672(a) (b)) which provides as follows:

"Any state agency may adopt such additional or more stringent standards for pipeline facilities and the transportation of gas not subject to the jurisdiction of the Federal Power Commission under the Natural Gas Act as are not compatible with the federal minimum standards, *but may not adopt or continue in force after the interim standards provided for above become effective any such standards applicable to interstate transmission facilities.*" (Emphasis added.)

The Safety Act required the Secretary of Transportation to establish the interim minimum federal safety standards within three months by adopting the state standards in effect on August 12, 1968. Louisiana had in effect at that time the safety code most widely used by the industry and known as the "B31.8 Code".[7] This code has thus served as the interim federal code and is to be replaced with the adoption of minimum federal safety standards on November 12, 1970. "[T]he interim standards are to be revoked on that date except for those provisions applicable to design, installation, construction, initial inspection, and initial testing of new pipelines which will remain in effect until March 13, 1971," 35 F.R. 13248. The Safety Act contemplated, and the regulations issued by the Department of Transportation thereunder provide, comprehensive standards and specifications for the construction, operation and maintenance of all natural gas pipelines facilities "in or affecting interstate commerce." This includes crossing under roads and highways.[8] The joint stipulation[9] indicated that the proposed pipeline will be designed, constructed, maintained and operated in accordance with the interim federal safety standards.

■ A close reading of Ordinance 1682 shows that although it purports to regulate the construction, installation and operation of canals as well as gas or liquid petroleum pipelines, in reality, it aims specifically at pipelines. Section 5(a) of the ordinance allows the police jury to amend the B31.8 code and provides that if there is any conflict with the code, the amendment shall prevail. Section 5(a) (1) (2) (3) (4) (b) speak only of the construction of the pipelines. Section 8 speaks only of the relocation, raising or lowering of pipelines. Section 9 notes that the ordinance only covers existing pipelines. No section could be construed to apply only to canals. Thus every section of the ordinance relates to the construction, installation or operation of gas or liquid petroleum pipelines. Because every section is interwoven and infected with this feature, this court finds that the entire statute, as applied to United's proposed pipeline, is invalid.

■ Even, arguendo, that the requirements for constructing and installing said line under the ordinance are identical with that of the interim federal code as defendant maintains in their brief, the ordinance would still be invalid. Congress by completely pre-empting this area of interstate pipeline safety has specifically prohibited the states from doing anything in this regard, § 1672, supra. This being the case, the ordinance cannot be valid regardless of whether its regulatory standards with respect to design, construction, maintenance and operation of the pipeline are greater, lesser or identical with those found in either the Safety Act or the Natural Gas Act. The pipeline here involved, being an interstate one about

---

7. The formal code name is the United States of America Standards Institute Standard Code for Pressure Piping—Gas Transmission and Distribution Systems— USAS B31.8, 1968 edition. See 49 CFR 190.5; and a stipulated correct copy of the Resolution of the Louisiana Public Service Commission attached to the joint stipulation in the record.

8. See for example 35 F.R. 13248, 13268 at section 192.323; or p. 31, para. 841.04 of the B31.8 code (1968 ed.).

9. Paragraph 20 of joint stipulation.

which Congress has left nothing to the states with respect to regulation and control, all regulatory authority and control is with the federal government. Northern Natural Gas Co. v. State Corp. Comm. of Kansas, 372 U.S. 84, 83 S.Ct. 646, 9 L.Ed.2d 601 (1963); Southern Ry. Co. v. Railroad Comm. of Indiana, 236 U.S. 439, 35 S.Ct. 304, 59 L.Ed. 661 (1915).

Although the statute as drawn is invalid, this court feels that an ordinance could be framed to provide safety standards for local transmission lines. In addition, it should be pointed out that immunity from Ordinance No. 1682 does not imply that United is free to construct unsafe pipelines which may be a danger to the health and welfare of Terrebonne Parish. The record shows the concern of the police jury at the lack of federal inspection of pipelines, especially at the initial construction level.[10] First, as noted above, United will construct the line in accordance with the interim Federal Safety Standards. These are the same standards the police jury wished to impose by the ordinance. Second, there is machinery available to the police jury now to maintain surveillance over the construction of United's line. Section 190.6 [11] of the interim minimum federal safety standards provides in pertinent part:

"(a) Any state agency of any state having authority under the laws of that state to exercise safety jurisdiction over interstate transmission facilities and that desires to exercise that authority as an agent of the Secretary of Transportation, is hereby authorized to do so. Each state agency exercising that authority shall notify the Director, Office of Pipeline Safety, in writing, of its intention to exercise that authority."

"States were authorized to act as agents of the Department of Transportation with respect to inspecting and overseeing interstate pipeline facilities, be-

cause the Office of Pipeline Safety [of the Department of Transportation] was not staffed to enforce regulations. Termination of the interim regulations will not affect the authority of the states to act as agents of this Department with respect to the Office of Pipeline Safety." 35 F.R., above at 13249, 13250.

In view of the foregoing the Terrebonne Police Jury can seek the remedy to the ills about which they complain through an appropriate state agency to insure compliance with all federal laws and regulations that have pre-empted this field.

Therefore, the Clerk will prepare a judgment.

## APPENDIX A

### MEMORANDUM OF REASONS

The plaintiff United Gas Pipeline Company, a Delaware corporation, does business in Louisiana. United is a natural gas company and engages in the piping and marketing of natural gas to supply it to the public. Presently, United operates and maintains approximately 10,000 miles of pipelines connected to more than 500 gas fields in the states of Texas, Louisiana, Mississippi, Alabama and Florida. The plaintiff wishes to construct a natural gas transmission pipeline connecting its presently existing interstate natural gas transmission pipeline to the Fundamental Oil Corporation No. 1 well, Southeast Houma Field, located in Terrebonne Parish, Louisiana. The purpose of the intended construction is to purchase and receive the natural gas produced from Fundamental's No. 1 as per United's purchase contract with the owners of Fundamental's No. 1. The natural gas so purchased by United from Fundamental's No. 1 will be transported in interstate commerce. This proposed pipeline must be constructed across the Woodlawn Ranch Road which is a road owned and maintained by the governing body (police jury) of Terre-

10. Record of testimony taken September 1, 1970 at pp. 51, 82, 84.

11. 19 CFR 190.6.

bonne Parish. The Policy Jury acquired a right-of-way and servitude for the Woodlawn Ranch Road from its owner, the South Coast Corporation, in 1958. Likewise, United purchased a right-of-way and servitude from South Coast to run its pipeline to Fundamental's No. 1, a distance of approximately 1,889 feet. In the course of this servitude and right-of-way, the pipeline will cross under the Parish's Woodlawn Ranch Road which the parish owns and maintains, based on its separate servitude and right-of-way from South Coast. United has applied to the police jury for a building permit to construct this pipeline under the Woodlawn Ranch Road. The police jury conditioned the issuance of the permit upon United agreeing to comply with Ordinance No. 1682 adopted on April 8, 1970 by the police jury and "upon United also agreeing that, if said proposed pipeline or any portion thereof interferes with any future public improvement in said parish, it, United, will alter, relocate or remove, at United's sole expense, the pipeline on that portion of the land covered and affected by the aforesaid right-of-way and servitude which United purchased from the South Coast Corporation which is not under the road."

Ordinance No. 1682 is an ordinance regulating the construction, installation and operation of gas or liquid petroleum pipelines or canals in Terrebonne Parish, and providing for specifications, reports, permits, insurance, fees, and providing penalties for violation thereof. United is unwilling to comply with sections 5(a), 5(a) (4) and 7 of the ordinance. Section 5(a) allows the police jury in its discretion to amend the Uniform Standards Association Standard Code for Pressure Piping, U.S. ASB 31.8 Code. Section 5(a) (4) requires United to give written notification of pipeline inspections to the police jury. Section 7 requires inspection fees and penalty for violation [See Appendix 1 for entire ordinance].

United challenges the constitutionality of the ordinance on the following several grounds: 1) The area is pre-empted by federal law (49 U.S.C. § 1671 et seq.); 2) The ordinance is an undue burden on interstate commerce; 3) The police jury lacks authority under state law to adopt such an ordinance. These allegations are not impressive. A fair reading of the ordinance, in light of a review of the statutes and cases cited in briefs submitted by both parties indicates that the ordinance is constitutional.

However, the additional requirement that United must agree to alter, relocate or remove its proposed pipeline at its sole expense, if it interferes with any future parish public improvement is, in effect, confiscatory and must fall. This condition precedent to the issuing of a permit would result in the taking of the pipeline company's property without the payment of just compensation in violation of the due process clause of the Fourteenth Amendment. Frost v. Railroad Commission of State of California, 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101 (1926); Thompson v. Consolidated Gas Utilities Corporation, 300 U.S. 55, 57 S.Ct. 364, 81 L.Ed. 510 (1936); Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965).

Accordingly, the Court finds that the Terrebonne Parish Police Jury should issue a permit to United Gas Pipeline Company conditioned upon United complying with Ordinance No. 1682 less the additional unconstitutional requirement obligating United to alter, relocate or remove its proposed pipeline at its sole expense for future parish improvements.

Let the Clerk prepare a judgment.

### APPENDIX I

### ORDINANCE NO. 1682

An ordinance regulating the construction, installation and operation of gas or liquid petroleum pipelines or canals in Terrebonne Parish, and providing for specifications, reports, permits, insurance, fees, and providing penalties for violation thereof.

BE IT ORDAINED BY THE POLICE JURY OF THE PARISH OF TERRE-

BONNE, acting as the governing authority of the Parish of Terrebonne, Louisiana, that:

SECTION 1: No person, firm, partnership or corporation, public or private, shall construct or cause to be constructed a facility consisting of a pipeline or canal or any group or segment thereof, or of dredging canals, slips, shells or the construction of bulkheads, platforms, levees and battures, on, over, across or through a Parish owned road, right of way, canal, drainage ditch, levee or any bayou under the jurisdiction of the Police Jury in Terrebonne Parish without having previously obtained a permit from the Police Jury of the Parish of Terrebonne in the manner hereinafter provided.

SECTION 2: Applications for permits required by Section 1 of this ordinance shall be made in writing to the Police Jury of Terrebonne Parish. Such application may be in the form of a letter and shall contain a clear description of the facility and its purpose, plans, specifications, location, map of location, and name and address of its owner and of a representative designated by such owner who may be contacted by Parish Officials on all future matters related to the construction, installation and maintenance of the facility. In addition, such applications shall be accompanied by the following:

(a) A certified or cashiers check in the amount of One Thousand and no/100 ($1000.00) Dollars for each crossing or excavation, as security for costs of returning said Parish owned road, right of way, canal, drainage ditch, levee or any bayou under the jurisdiction of the Police Jury to the condition which it was prior to said crossing or excavation. This check will be refunded after thirty (30) days from the completion of the construction of the facility upon certification by the designated Parish Engineer that the road, right of way, canal, drain-

age ditch, levee or any bayou under the jurisdiction of the Police Jury crossed or excavated has been placed back in its original condition before the crossing or excavation was undertaken.

(b) A letter of compliance with this ordinance.

SECTION 3: Within thirty (30) days after receipt of an application which meets the requirements of Section 2, the applicant shall receive a construction permit or be advised in writing as to why a permit cannot be issued.

SECTION 4: Before construction begins a certificate evidencing liability insurance in the amount of Five Hundred Thousand and no/100 ($500,000.00) Dollars, or satisfactory evidence of financial responsibility in a like manner, shall be furnished the Police Jury by applicant, as well as, evidence of insurance coverage against all loss, injury, responsibility or peril for claims arising under the workman's compensation laws of the State of Louisiana and/or under any statute of the United States of America.

SECTION 5: (a) In addition to the specific requirements set forth in this Section, all plans, specifications, materials and the installation of any pipeline for which a permit is required by Section 1 hereof shall comply with the Uniform Standards Association Standard Code for Pressure Piping, U.S. AS B31.8 Code, in connection with gas pipelines, and U.S. AS B31.4 Code, relating to liquid petroleum tranportation piping systems, where applicable, *and such amendments thereto as are approved by the Police Jury of Terrebonne Parish or its delegate.* Should any provision of said Code conflict with the requirements of this Section, the latter shall prevail.

(1) Any pipeline or segment thereof, on, over, across, or through a Parish owned road or right of way shall have an earth covering a minimum three (3') feet. If excavations are required they shall be backfilled and tamped in six inch (6") layers. Pipelines con-

structed under hard surfaced parish owned roads will be encased where same is required under the U.S. AS Codes referred to hereinabove. Adequate drainage shall be maintained at all times during the installation of pipelines. Markers shall be installed to mark the location of all pipelines on Parish owned roads and rights of way or other public project.

(2) Pipelines crossing a Parish owned drainage ditch, canal or any bayou under the jurisdiction of the Police Jury shall be laid under the following specifications when water level is—

> 0.0 feet to six (6') feet—6 feet of cover
> Six (6') feet to Ten (10') feet—4 feet of cover
> Ten (10') feet to ad infinitum—3 feet of cover

Markers shall be installed to mark the location of any such pipeline crossing.

(3) Any pipeline which crosses a Parish owned levee shall be constructed in accordance with the latest applicable regulations and specifications of the Louisiana Department of Public Works.

(4) The owner of any pipeline constructed hereunder shall conduct an annual inspection as may be required under the U.S. AS Codes, and upon doing so owner shall notify the Police Jury in writing that this inspection has been made

(b) The Police Jury of Terrebonne Parish or its delegate may grant a special exception to any requirement of Subsection (a) of this Section, upon a showing that the fulfillment of such requirement would impose undue hardship upon the owner of the pipeline, or that such requirement is inappropriate due to the existence of special conditions. Any exception granted by the Police Jury or its delegate may be conditioned in any manner it deems necessary or appropriate.

SECTION 6: Within thirty (30) days after the completion of any facility for which a permit is required by Section 1 hereof, the permitee shall file with the Police Jury of Terrebonne Parish or its delegate, a sworn declaration of completion properly identified with the application and permit, certifying that the facility and its construction and installation are in accordance with the plans and specifications approved by the permit, or any supplemental permit which may have been issued. The declaration of completion shall be accompanied by a map or plat, in a form acceptable to the Police Jury of Terrebonne Parish or its delegate, showing the location of that portion or portions of the facility which are located on public projects.

SECTION 7: Any project or facility for which a permit is required by Section 1 hereof shall be inspected by the Police Jury of Terrebonne Parish or its delegate, both during and after completion. The permittee shall pay an inspection fee of One Hundred and no/100 ($100.00) Dollars per day, provided however that in no event shall such fee exceed Five Hundred and no/100 ($500.00) Dollars. If any such inspection reveals substantial deviation from the requirements of this ordinance, or from the plans and specifications submitted with the application or supplemental application, the permitee shall be required to rectify such deviations at his sole cost and expense, and the Police Jury of Terrebonne Parish or its delegate shall supervise and inspect the remedial work and permitee shall pay an inspection fee of Two Hundred and no/100 ($200.00) Dollars per day, provided however that in no event shall such fee exceed One Thousand and no/100 ($1,000.00) Dollars. Should the permitee fail to commence remedial work within thirty (30) days following written notification, or where said remedial work has been timely started but has not been completed within a reasonable time, the Policy Jury of Terrebonne Parish or its delegate may have the work performed at the expense of the permittee.

SECTION 8: When any public project for the Parish of Terrebonne is initiated which requires the relocation, raising or lowering of a segment of a pipeline which has been constructed on an existing Parish owned road, right of way, canal, drainage ditch, levee or any bayou under the jurisdiction of the Police Jury said relocation or change shall be at the sole cost and expense of the owner of the pipeline.

SECTION 9: Notwithstanding anything to the contrary herein provided, no provision of this ordinance shall apply to pipelines and related works in place or being constructed on the effective date of this ordinance.

SECTION 10: In connection with any of the construction or work referred to hereinabove and with particular reference to any and all spoil banks or other works being constructed, the work shall be performed in such a manner as not to interfere (except on a temporary basis) with the normal tidal flow in any marsh area and if a spoil bank is to be located in a marsh area, there shall be provided adequate drainage at two hundred (200') foot intervals, to allow the tidal waters to flow in and through said spoil bank.

SECTION 11: Any person, firm, partnership or corporation convicted of a violation of any provision of this ordinance shall be punished by a fine of not more than One Hundred and no/100 ($100.00) Dollars, or imprisoned for not more than thirty (30) days in jail, or both, at the discretion of the Court. For the purposes of applying and enforcing the penalties contained in this section, each day a violation may occur or continue shall be deemed a separate offense and punishable accordingly.

SECTION 12: If any section, paragraph, sentence, clause or part of this ordinance shall be declared to be unconstitutional, ultra vires or otherwise invalid, the remaining parts of this ordinance shall remain in full force and effect.

SECTION 13: All ordinances, or parts of ordinances, in conflict herewith are hereby repealed.

Upon roll call there was recorded:

YEAS: 13

NAYS: 0

ABSENT & NOT VOTING: 1

And the President declared the Ordinance adopted on this 8th. day of April, 1970.