## ROHR AIRCRAFT CORP. v. COUNTY OF SAN DIEGO et al.

No. 295.   Argued March 30, 1960.—Decided May 23, 1960.

*Leroy A. Wright* argued the cause and filed a brief for appellant.

*Manuel L. Kugler* and *Henry A. Dietz* argued the cause for appellees.   With them on the brief were *Carroll H. Smith* and *Duane J. Carnes.*

*Myron C. Baum* argued the cause for the United States, as *amicus curiae,* urging reversal. On the brief were *Solicitor General Rankin, Assistant Attorney General Rice* and *John J. McCarthy.*

MR. JUSTICE CLARK delivered the opinion of the Court.

The question to be decided is whether real property declared to be surplus under the Surplus Property Act of 1944, 58 Stat. 765, but the record title to which is in the Reconstruction Finance Corporation, continues to be subject to local taxation under the exemption of § 8 of the Reconstruction Finance Corporation Act, 47 Stat. 5.[1] The Supreme Court of California and the Supreme Court of Michigan[2] have held that it does. The Court of Claims has reached the opposite conclusion.[3] In view of this conflict we agreed to hear this case, but postponed consideration of the question of jurisdiction to the hearing on the merits. 361 U. S. 859.

On the question of jurisdiction, we believe that appellant did not make the required "explicit and timely insistence in the state courts that a state statute, as applied, is repugnant to the federal Constitution, treaties or laws. . . . And it has long been settled that an attack

---

[1] Section 8 (as amended):

". . . any real property of the Corporation shall be subject to . . . State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed." 61 Stat. 205; 15 U. S. C. § 607.

[2] *Continental Motors Corp.* v. *Township of Muskegon,* 346 Mich. 141, 77 N. W. 2d 370.

[3] *Board of County Comm'rs of Sedgwick County* v. *United States,* 123 Ct. Cl. 304, 105 F. Supp. 995. In a case involving property in a similar posture, the Ninth Circuit reached a result in accord with *Sedgwick County,* and contrary to the California and Michigan courts. *United States* v. *Shofner Iron & Steel Works,* 168 F. 2d 286. In *Shofner,* the ultimate issue was not tax immunity, but ejectment of a defendant from government property.

upon a tax assessment or levy, such as [appellant] here made, on the ground that it infringes a taxpayer's federal rights, privileges, or immunities, will not sustain an appeal . . . ." *Charleston Federal Savings & Loan Assn.* v. *Alderson,* 324 U. S. 182, 185 (1945).[4] The appeal is therefore dismissed. While the case is not properly here by appeal, we treat the same as a petition for certiorari under 28 U. S. C. § 2103.[5] The petition is granted. On the merits, we conclude that the property involved is not within the waiver provision of the federal Act.

The language of § 8 of the Reconstruction Finance Corporation Act was borrowed from earlier federal legislation dealing with federal financial institutions.[6] The congressional policy appears to have been to waive tax

---

[4] 28 U. S. C. § 1257 provides:

"Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows:

.        .        .        .        .

"(2) By appeal, where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity.

"(3) By writ of certiorari, . . . where any title, right, privilege or immunity is specially set up or claimed under the Constitution, treaties or statutes of . . . the United States."

[5] 28 U. S. C. § 2103:

"If an appeal to the Supreme Court is improvidently taken from the decision of the highest court of a State in a case where the proper mode of a review is by petition for certiorari, this alone shall not be ground for dismissal; but the papers whereon the appeal was taken shall be regarded and acted on as a petition for writ of certiorari and as if duly presented to the Supreme Court at the time the appeal was taken. . . ."

[6] See 13 Stat. 99, 111, 12 U. S. C. § 548 (national banking associations) ; 38 Stat. 251, 258, 12 U. S. C. § 531 (Federal Reserve Banks) ; 39 Stat. 380, 12 U. S. C. §§ 931, 933 (Federal Land Banks) ; 42 Stat. 1469, 12 U. S. C. § 1261 (National Agricultural Credit Corporation).

exemption on real property owned by government corporations whose functions were primarily financial in nature. Originally conceived for the purpose of making loans to distressed business concerns, the Reconstruction Finance Corporation was in this category. Apparently Congress was concerned that property obtained by the Corporation through its financial operations in aid of economic recovery policies would lose its taxable status. Through § 8, therefore, Congress preserved the right of state and local governmental bodies to tax property even though it came into the hands of the Corporation. Success crowned the economic efforts of the Corporation, and, as the country approached the critical period immediately preceding its entry into World War II, Congress in 1940 extended the Corporation's functions to include the stockpiling of critical supplies and the operation of plants engaged in the manufacture of war material. 54 Stat. 573. It was soon apparent that large tracts of land would be necessary in this operation, and the waiver was extended to the real estate holdings of the Defense Plant Corporation, a subsidiary of the Reconstruction Finance Corporation. 55 Stat. 248.

The termination of the war quickly threw substantial portions of such property into disuse, there being no further need for the mass production of war material. The President created the War Assets Administration for the purpose of disposing of all government surplus property.[7] After March 25, 1946, government agencies possessing property surplus to official needs were required so to declare it and to transfer it to the Administration for disposal.[8] By declaration of May 29, 1946, the Reconstruction Finance Corporation declared the subject property to be surplus to its needs and responsibilities. Under

---

[7] See Exec. Order No. 9689, dated Jan. 31, 1946, 11 Fed. Reg. 1265.
[8] See Surplus Property Act of 1944, 58 Stat. 765.

the Surplus Property Act, this declaration transferred [9] to the War Assets Administration the functions of: caring for and handling the property pending disposal (§ 3 (g) and § 6); making disposition of the property on such terms as it saw fit (§ 9 (b) and § 15 (a)), including donation under certain conditions (§ 13 (b)); and the power of execution and delivery of all necessary papers incident to transfer of title (§ 15 (b)). It further provided that all funds derived from such disposition would be covered into the United States Treasury as miscellaneous receipts (§ 30 (a)). Pursuant to this declaration by the Reconstruction Finance Corporation, the War Assets Administration took possession of this property on May 29, 1946, and its successor, the General Services Administration, [10] retained possession until September 1, 1949, during which period the property was used as a storage depot and a sales center for surplus property held by the Administration. On the latter date, the property was leased to appellant's predecessor. The lease described the lessor as the "Reconstruction Finance Corporation . . . and the United States of America, both acting by and through the General Services Administrator under . . . the Surplus Property Act of 1944."

Appellees assessed ad valorem real property taxes on the realty against the Reconstruction Finance Corporation, as owner, for the fiscal tax years 1951 to 1955, inclusive. Appellant paid the taxes [11] and filed this suit after claims for refund had been denied. The trial court

---

[9] The Act did not require the execution of a deed to the Administration.

[10] As of July 1, 1949, Congress transferred all of the functions of the War Assets Administration to the General Services Administration. See Federal Property and Administrative Services Act of 1949, c. 288, 63 Stat. 377.

[11] By the terms of the lease, the lessee undertook to pay all taxes legally assessed against the property.

entered judgment against appellant. On appeal, the Supreme Court of California affirmed the judgment of the trial court, and denied the claim for refund. 51 Cal. 2d 759, 336 P. 2d 521.

There would be no question as to the exemption of the real property involved had the record title been in the name of the United States. Since March 17, 1955, in fact, it has been so recorded; on that date the Reconstruction Finance Corporation executed and recorded a quitclaim deed to the United States.

The Supreme Court of California correctly posed as the underlying question, "whether the land ceased to be 'real property of the' Reconstruction Finance Corporation" after it was declared surplus and became subject to the provisions of the Surplus Property Act of 1944. That court found that, since no deed was executed transferring title out of the Reconstruction Finance Corporation until 1955, it remained "property of the Corporation" and hence subject to taxation until that time. We believe the court placed too much reliance on the fact that the bare record title to the property remained in the name of the Corporation.

It appears to us that the purpose of the waiver provision was to permit taxation of real property being used by the Reconstruction Finance Corporation in the performance of its functions. Such use was terminated when the property was declared surplus in 1946. At that time another agency of the Government took both the occupancy and complete control of the property for the purpose of management and disposition. The Reconstruction Finance Corporation, under the specific provisions of the Surplus Property Act, thereby lost all power and control over the property, which came into the hands of the Administrator for the account of the United States, any proceeds therefrom being ordered paid into the United States Treasury. Thereafter, the Administrator elected,

as he had the statutory power to do, to lease the property to appellant's predecessor. The real property, however, remained in the account of the United States, not the Reconstruction Finance Corporation. As the Supreme Court of California recognized, the general rule is "that lands owned by the United States of America or its instrumentalities are immune from state and local taxation." We think that the land here was "owned" by the United States.

We believe that California overlooks the fact that, while the 1949 lease was formally made in the name of both the United States and the Reconstruction Finance Corporation, as lessors, it recited on its face that the property was "surplus property of the Government of the United States" and subject to the Surplus Property Act of 1944. Furthermore, this lease noted that the property had "been assigned to War Assets Administration for disposal," and that "the Department of Air Force has determined that the use of the leased premises by the Lessee herein is necessary for the production of military equipment for the National Defense." Moreover, the property had been occupied by the War Assets Administration during the two years immediately preceding its lease. The appellees' contention seems to be that, since the lease was in the name of the Reconstruction Finance Corporation as well as the United States, the land was "property of the Corporation." We hardly think such a conclusion inevitable. We believe that the appropriate test would turn on practical ownership of the property rather than the naked legal title. This is the more necessary with respect to public property where the record title may often be in a government agency or department—or, for that matter, in an official of the Government—rather than in the name of the United States. Here the Reconstruction Finance Corporation had no proprietary interest in the property, no possession or control thereof, was performing none of

its functions with regard thereto, and could receive none of the income or future benefits therefrom. Even though it held the record title, such holding, under the circumstances here, could be only for the benefit of the United States. All of the incidents of beneficial ownership ended by the express mandate of the statute when the property was declared surplus and transferred to another agency for disposition.

When confronted with the same issue as presented by the instant case, the Court of Claims reached a conclusion directly contrary to that of the Supreme Court of California. *Board of County Comm'rs of Sedgwick County* v. *United States,* 123 Ct. Cl. 304, 105 F. Supp. 995. The Court of Claims there noted that, after the declaration of surplus, the Reconstruction Finance Corporation had no "physical possession, control, or custody of the property. It had neither the use nor the right to use the property." The court went on to conclude that "[t]here is no indication that Congress intended to waive immunity from taxation under these circumstances." 123 Ct. Cl., at 324, 105 F. Supp., at 1001. We agree with the Court of Claims "that the cloak of immunity descended upon the property [when it was declared surplus] and no tax liability for the property could arise thereafter." 123 Ct. Cl., at 324, 105 F. Supp., at 1002.

Since the crucial element is the intent of Congress, it is important to note the enactment of a 1955 statute providing the States relief from the effects of federal immunity. 40 U. S. C. §§ 521–524. The congressional declaration of purpose in that statute "recognizes that the transfer of real property having a taxable status from the Reconstruction Finance Corporation . . . to another Government department has often operated to remove such property from the tax rolls . . . ." "Transfer" was defined to include "a transfer of custody and control of, or accountability for the care and handling of," the prop-

erty, as well as "transfer of legal title." The statute goes on to provide for certain payments in lieu of taxes where such a transfer occurs. The relevance of this statute lies in a congressional sanction of the rule of the *Sedgwick County* case, construing the waiver provision.

We cannot say that Congress in 1932 intended to waive the tax exemption on "real property of the Corporation" after the Corporation found the property surplus to its needs and responsibilities and transferred it to another agency, for management and disposition as United States property. To say that the Government's land remained taxable merely because no formal deed was executed transferring title, either to itself or any of its designated agencies, would but make a local tollgate of a technicality.

Nor can we agree that the short administrative practice claimed here continued the waiver in effect. Even if the responsible agency had permitted the paper title to the Government's property to remain in the Reconstruction Finance Corporation for the sole purpose of allowing it to be taxed, the congressional mandate in the Surplus Property Act of 1944 could not be overridden. As to such matters, any adjustments between the federal and the local governments are strictly legislative ones for the Congress, *United States* v. *City of Detroit,* 355 U. S. 466, 474 (1958), and not within the discretion of the executive agencies.

The judgment is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS dissent.