588 F.2d 1308
 UNITED STATES of America, Plaintiff and Respondent,
v.
COUNTY OF LOS ANGELES, CALIFORNIA, Philip E. Watson, Los
Angeles County Tax Assessor, and H. B. Alford, Los
Angeles County Treasurer and Tax
Collector, Defendants and Appellants.
 No. 76-1489.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 8, 1979.
 
 1
 Lawrence B. Launer, Los Angeles, Cal., for defendants and appellants.
 
 
 2
 John J. McCarthy, Atty., Dept. of Justice, Washington D. C., for plaintiff and respondent.
 
 
 3
 Appeal from the United States District Court for the Central District of California.
 
 
 4
 Before HUFSTEDLER and TRASK, Circuit Judges, and CLAIBORNE*, District Judge.
 
 CLAIBORNE, District Judge:
 
 5
 On August 18, 1975, the Appellee, United States of America, filed suit in the United States District Court for the Central District of California against the Appellants, County of Los Angeles, Los Angeles County Assessor Philip Watson, and Los Angeles County Treasurer and Tax Collector H.B. Alvord[1] for a (1) temporary and permanent injunction enjoining the County from assessing, imposing, and collecting the California ad valorem personal property tax, and (2) for a declaratory judgment that a ship known as the "Hughes Glomar Explorer" was owned and controlled by the United States Government and was, therefore immune from the California ad valorem personal property tax.
 
 
 6
 The United States Government moved for summary judgment.
 
 
 7
 On February 6, 1976, United States District Judge Manuel Real heard both motions and granted the motion for summary judgment, from which the County of Los Angeles appeals.
 
 
 8
 The standard under F.R.C.P. 56(c)[2] for determining whether to grant a motion for summary judgment is whether there is any genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law.
 
 
 9
 When reviewing a case disposed of under F.R.C.P. 56, this Court must apply the same standard as that employed by the trial court. In reviewing this motion we are not bound by the findings of the district court, and this Court must undertake an independent review of the record to determine whether disputed issues of material fact are present. United States v. Fred A. Arnold, Inc., 573 F.2d 605 (9th Cir. 1978).
 
 
 10
 An independent review of the record discloses the following uncontroverted facts:
 
 
 11
 In the early part of 1970 the United States Government approached Global Marine, Inc. (hereinafter referred to as GMI) for a possible solution of a particular classified problem. GMI suggested several systems as a solution to the problem. One of these systems was the concept of the construction of a vessel which was later constructed and known as the "Hughes Glomar Explorer". This concept was approved and shortly thereafter the vessel was designed and constructed pursuant to a classified contract entered into on December 5, 1972 between the United States, GMI, and the Summa Corporation. This contract was preceded by a classified letter agreement entered into on November 13, 1970 clarifying the relationships of the parties pending execution of the December 5, 1972 agreement.
 
 
 12
 In the 1970 agreement "Agent" refers to Hughes Tool Co., while in the 1972 agreement "Agent" refers to Summa Corporation. (Hughes Tool Co. later became Summa Corporation). Summa Corporation was brought into the transaction by GMI who developed the concept of the vessel. Summa's role was to be only an undisclosed agent for the sponsor with the agent representing itself as the operator of the vessel for the purpose of secrecy. In both contracts, the "Sponsor" is the United States and the "Contractor" is Global Marine, Inc. The December 5, 1972 contract expressly provides that the "Hughes Glomar Explorer" is the property of the United States.
 
 
 13
 Thus, the contractual provisions concerning the classified government mission clearly recognized that the vessel was to be built and designed ostensibly for and owned ostensibly by the Summa Corporation so as to secrete actual government ownership.
 
 
 14
 After Government acceptance of the ship in 1973, papers were filed by the Summa Corporation with the United States Coast Guard in Wilmington, Delaware designating the home port of the vessel as Wilmington and the owner of the vessel as the Summa Corporation. The ship then sailed to the west coast, accepted by the United States Government, and registration papers were appropriately filed with the United States Coast Guard in Long Beach, California, reciting that the ship was temporarily enrolled in the Port of Long Beach and licensed to engage in trade off the west coast of the United States. In these papers the Summa Corporation was again listed as the owner of the ship.
 
 
 15
 Thereafter, under the impression that the Summa Corporation was the owner of the ship, the County Assessor of Los Angeles County billed the Summa Corporation for $4,395,152.43 for 1974 and $3,119,865 for 1975 ad valorem property taxes. On August 18, 1975, the County Tax Collector attempted to seize the ship at its mooring in Long Beach, California to satisfy the alleged revenue obligations. The United States of America then instituted this suit seeking a declaratory judgment that the ship was personal property owned and controlled by the United States and therefore immune under the Federal Constitution from the California ad valorem personal property tax.
 
 
 16
 The basic question before the District Court then is the same basic question now before this Court. Were there contested issues of material fact as to the actual ownership and control of the vessel? It is clear that Summa Corporation had nothing more than naked legal title since the December 5, 1972 contract specifically provided that it was only for purposes of security and secrecy that the title be registered in the name of Summa Corporation. This is strengthened by the fact that Summa Corporation, upon direction of the United States Government immediately surrendered the Coast Guard Certificate for Enrollment and License.
 
 
 17
 The facts are uncontroverted that the "Hughes Glomar Explorer" is the property of the United States Government and the contracts under which this ship was designed, built and operated clearly show that it was the property of the United States at the time of the County Assessor's billings to Summa Corporation and at the time it was seized by the Los Angeles County Tax Collector.
 
 
 18
 As early as 1819, the United States Supreme Court in M'Culloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 (1819), held that under the United States Constitution the properties, functions, and instrumentalities of the federal government are immune from taxation by its constituents. Since that case, the United States Supreme Court has not departed from that basic doctrine.
 
 
 19
 The United States Government's contention that it is immune from the assessment of the ad valorem tax is correct. The fact that title to the "Hughes Glomar Explorer" was registered in the name of Summa Corporation does not change the result. The Supreme Court in Rohr Aircraft Corporation v. County of San Diego, 362 U.S. 628, 80 S.Ct. 1050, 4 L.Ed.2d 1002 (1960), held that the appropriate test for determining governmental immunity from ad valorem property taxes is "practical ownership" rather than "naked legal title".
 
 
 20
 The District Court's ruling granting summary judgment was correct since there is no genuine issue of material fact as to the Government's ownership and control of the "Hughes Glomar Explorer" and therefore the United States is entitled to judgment as a matter of law.
 
 
 21
 Appellant further contends that notwithstanding the findings of the uncontroverted ownership of the ship in the United States Government that summary judgment should have been denied since (1) the United States Government did not cooperate with discovery proceedings and (2) Summa Corporation may have had a beneficial interest in the fruits of the vessel's mission. The first contention merely begs the basic issue in this case. No amount of discovery would have varied the terms of the written agreements, pursuant to the terms of which this ship was designed, constructed and operated and which clearly shows ownership and control in the United States. The second proposition is equally untenable in that the facts did not establish any beneficial interest to Summa Corporation by the government operation of said vessel. Indeed, the Appellants did not claim to the contrary. In fact, Appellants only speculate and surmise that there might be. Speculation and conjection can never create a genuine triable issue.
 
 
 22
 The judgment of the District Court is affirmed.
 
 
 
 *
 Honorable Harry E. Claiborne, United States District Judge, District of Nevada, sitting by designation
 
 
 [1]
 Hereinafter referred to collectively as the "County of Los Angeles."
 
 
 [2]
 F.R.C.P. 56(c) provides in pertinent part:
 . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . .