**Peter SHAPIRO, Essex County Executive, Plaintiff,**

v.

**James A. BAKER, III, Secretary of the Treasury of the United States, Defendant.**

**Civ. A. No. 84–2492.**

United States District Court, D. New Jersey.

Nov. 5, 1986.

David H. Ben-Asher, Essex Co. Counsel by Jessica G. De Koninck, Asst. Co. Counsel, Newark, N.J., for plaintiff.

Thomas W. Greelish, U.S. Atty. by Mary C. Cuff, Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

CLARKSON S. FISHER, Chief Judge.

■ Presently before the court is defendant's motion for reconsideration, pursuant to Fed.R.Civ.P. 60(b) [1] and local rule 12(I),[2] of an order that denied defendant's motion for a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons set forth below, defendant's motion for reconsideration and judgment on the pleadings is granted.

The fundamental facts of this case were adequately set forth in the court's opinion dated June 17, 1986, and need not be restated here. The issue to be decided is whether Essex County's ability to raise revenue, a function of government, was hampered by 26 U.S.C. § 86 [3] thus violating

---

1. Rule 60(b) states in pertinent part that

 [o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:
 . . . .
 (6) any other reason justifying relief from the operation of the judgment. . . .
 Motions for relief under rule 60(b) are addressed to the discretion of the court. *Greco v. Reynolds,* 416 F.2d 965 (3d Cir.1969); *Petition of De Roma,* 603 F.Supp. 127, 131 (D.N.J.1985).

2. Rule 12(I) states in pertinent part that

 [a] motion for reargument shall be served and filed within 10 days after the filing of the Court's order or judgment on the original motion. There shall be served with the notice a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked.

3. (a) **In general.**—Gross income for the taxable year of any taxpayer described in subsection (b) (notwithstanding section 207 of the Social Security Act) includes social security benefits in an amount equal to the lesser of—

 (1) one-half of the social security benefits received during the taxable year, or
 (2) one-half of the excess described in subsection (b)(1).
 (b) **Taxpayers to whom subsection (a) applies.—**
 (1) **In general.**—A taxpayer is described in this subsection if—
 (A) the sum of—
 (i) the modified adjusted gross income of the taxpayer for the taxable year, plus
 (ii) one-half of the social security benefits received during the taxable year, exceeds
 (B) the base amount.
 (2) **Modified adjusted gross income.**—For purposes of this subsection, the term "mod-

the principle of intergovernmental tax immunity, a principle developed and narrowed in a long line of cases beginning with *Pollock v. Farmers' Loan & Trust Co.,* 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759 (1895). The court allowed plaintiff to establish a record for trial.

Defendant argues that the court erred in refusing to accept recent Supreme Court precedents which establish that tax immunity applies only if the legal incidence of the tax is placed on the challenging governmental entity. Secondly, defendant states that the court erred in failing to determine that 26 U.S.C. § 86 does not impose a tax on interest income paid by local governments. Defendant's contention is that immunity can apply only where the legal incidence of the tax is laid directly on a local government. Thus, because 26 U.S.C. § 86 does not impose a direct tax on the interest income generated by the issuance of municipal bonds, the tax immunity claimed by plaintiff is inapplicable.

Plaintiff's argument is that intergovernmental tax immunity is applicable in this case because, even if section 86 does not impose a direct tax on the interest income derived from the purchasing of municipal bonds, section 86 does impose an indirect tax placing a substantial burden upon the county government's function to raise revenue. Plaintiff considers this an infringement upon the sovereignty of the states in violation of the tenth amendment to the United States Constitution and also in violation of article I section 8 of the Constitution.

Section 86 provides that social security benefits to be included in the gross income of a taxpayer for a taxable year will be limited to the lesser of (1) one-half the social security benefits received, or (2) one-half the excess of the sum of the taxpayer's adjusted gross income, interest on obligations exempt from tax, and one-half of the social security benefits received over

the appropriate base amount. S.Rep. No. 98–21, 98th Cong., 1st Sess. 26, *reprinted in* 1983 U.S.Code Cong. & Ad.News 143, 168. Included in the equation to compute modified adjusted gross income is "interest received or accrued by the taxpayer during the taxable year which is exempt from tax." 26 U.S.C. § 86(b)(2)(B). It is section 86(b)(2)(B) that is the source of the controversy.

The principle that the federal government may not tax the interest from municipal bonds, as stated previously, stems from *Pollock v. Farmers Loan & Trust Co.,* wherein the Court faced an angry stockholder who owned shares of stock in the Farmers Loan & Trust Co. and who wanted the Court to enjoin the bank from paying income taxes on income earned from the interest on municipal bonds the bank purchased from the City of New York. 157 U.S. at 432–33, 15 S.Ct. at 674–75. The Court adopted the principle of intergovernmental tax immunity in instances where the tax is levied directly against the state and thus imposes a burden on the state's ability to raise revenue by borrowing. The Court held that

"[t]he right to tax the contract to any extent, when made, must operate upon the power to borrow before it is exercised, and have a sensible influence on the contract. The extent of this influence depends on the will of a distinct government. To any extent, however inconsiderable, it is a burthen on the operations of government. It may be carried to an extent which shall arrest them entirely.... The tax on government stock is thought by this court to be a tax on the contract, a tax on the power to borrow money on the credit of the United States, and consequently to be repugnant to the Constitution." Applying this language to these municipal securities, it is obvious that taxation on the interest therefrom would operate on the power to borrow before it is exercised, and would

ified adjusted gross income" means adjusted gross income—
(A) determined without regard to this section and sections 221, 911, 931, and 933, and

(B) increased by the amount of interest received or accrued by the taxpayer during the taxable year which is exempt from tax.

have a sensible influence on the contract, and that the tax in question is a tax on the power of the States and their instrumentalities to borrow money, and consequently repugnant to the Constitution. *Pollock v. Farmer's Loan & Trust Co.,* 157 U.S. at 586, 15 S.Ct. at 691 (quoting *Weston v. Charleston,* 2 Pet. 449, 468, 7 L.Ed. 481).

The precedential weight of *Pollock* was doubtful from the start. The sixteenth amendment to the Constitution, ratified in 1913, states that " '[t]he Congress shall have power to lay and collect taxes on incomes from whatever source derived, without apportionment among the several States and without regard to any census or enumeration.' This clear language makes the fact that income is derived from interest on state or local obligations constitutionally irrelevant." *South Carolina v. Regan,* 465 U.S. 367, 406, 104 S.Ct. 1107, 1129, 79 L.Ed.2d 372 (1983) (Stevens, J., concurring in part and dissenting in part). At every opportunity, the Court has rejected the intergovernmental tax-immunity theory.[4] For example, in *Helvering v. Gerhardt,* 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427 (1938), the Court held the United States could tax the salaries of state employees. In so holding, the Court said

if every federal tax which is laid on some new form of state activity, or whose economic burden reaches in some measure the state or those who serve it, were to be set aside as an infringement of state sovereignty, it is evident that a restriction upon national power, devised only as a shield to protect the states from curtailment of the essential operations of government which they have exercised from the beginning, would become a ready means for striking down the taxing power of the nation.... Once impaired by the recognition of a state immunity found to be excessive, restoration of that power is not likely to be secured through the action of state legislatures; for they are without the inducements to act which have often persuaded Congress to waive immunities thought to be excessive.

304 U.S. at 417, 58 S.Ct. at 974 (citation and footnote omitted). The theory for the intergovernmental tax immunity was again rejected in *Graves v. New York ex rel. O'Keefe,* 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927 (1939), wherein the Court held that a state could tax the salary of a federal employee. The Court reasoned that

[s]o much of the burden of a nondiscriminatory general tax upon the incomes of employees of a government, state or national, as may be passed on economically to that government, through the effect of the tax on the price level of labor or materials, is but the normal incident of the organization within the same territory of two governments, each possessing the taxing power. The burden, so far as it can be said to exist or to affect the government in any indirect or inciden-

---

4. *See Oklahoma Tax Comm'n v. Texas Co.,* 336 U.S. 342, 348, 69 S.Ct. 561, 565, 93 L.Ed. 721 (1949) (a lessee in alloted and restricted Indian lands in Oklahoma has no immunity from nondiscriminatory state gross-production taxes and state excise taxes on petroleum produced from such lands); *New York v. United States,* 326 U.S. 572, 66 S.Ct. 310, 90 L.Ed. 326 (1946) (United States could tax New York's income from its sale of state-owned mineral waters); *Alabama v. King & Boozer,* 314 U.S. 1, 8–9, 62 S.Ct 43, 45, 86 L.Ed. 3 (1941) (upheld a state sales tax levied on the cost of material used by a federal contractor in performing a cost plus contract, despite the fact that under the contract the economic burden fell on the United States); *Helvering v. Mountain Producers Corp.,* 303 U.S. 376, 58 S.Ct. 623, 82 L.Ed. 907 (1938) (upheld the power of the United States to tax income derived from property leased from a State); *James v. Dravo Contracting Co.,* 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937) (a state could tax the income of an independent contractor of the United States); *Willcuts v. Bunn,* 282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304 (1931) (capital gains derived from sales of municipal bonds could be taxed by the United States despite the fact that this tax would reduce the value of the bonds); *Metcalf & Eddy v. Mitchell,* 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384 (1926) (United States could tax the income derived by an independent contractor from its contracts with the state); *Greiner v. Lewellyn,* 258 U.S. 384, 42 S.Ct. 324, 66 L.Ed. 676 (1922) (transfers of state bonds are subject to federal estate and gift taxes).

tal way, is one which the Constitution presupposes, and hence it cannot rightly be deemed to be within an implied restriction upon the taxing power of the national and state governments which the Constitution has expressly granted to one and has confirmed to the other.

*Id.* at 487, 59 S.Ct. at 601.

■ In more recent cases, the Supreme Court has continued to narrow if not reject immunity doctrine.[5] In *Washington v. United States,* 460 U.S. 536, 103 S.Ct. 1344, 75 L.Ed.2d 264 (1983), the Court upheld Washington State statutes that levied a sales tax on federal contractors for materials used on federal projects, although on non-federal projects the tax was imposed on the landowner. "[I]mmunity may not be conferred [on the United States] simply because the tax has an effect on the United States, or even because the Federal Government shoulders the entire economic burden of the levy." *Id.* at 540, 103 S.Ct. at 1347 (quoting *United States v. New Mexico,* 455 U.S. 720, 734, 102 S.Ct. 1373, 1382, 71 L.Ed.2d 580 (1982)). "So long as the tax is not directly laid on the Federal Government, it is valid if nondiscriminatory ... or until Congress declares otherwise." *United States v. County of Fresno,* 429 U.S. 452, 460, 97 S.Ct. 699, 703, 50 L.Ed.2d 683 (1977). Thus immunity is found applicable only where the governmental entity itself is legally obligated to bear the costs of the tax.[6]

The doctrine of intergovernmental tax immunity has been stripped to the bare bone. The doctrine is inapplicable to this case because the federal government has not placed a direct tax upon the states through 26 U.S.C. § 86. The reliance of this court and plaintiff on *Massachusetts v. United States,* 435 U.S. 444, 98 S.Ct. 1153, 55 L.Ed.2d 403 (1978), was misplaced. In *Massachusetts* the Court dealt with a "flat fee" registration tax on all civil aircraft, including those owned by the states and by the federal government, that fly within the navigable air space of the United States. After Massachusetts paid the tax, it instituted a refund action contending that the United States could not constitutionally impose a tax that directly affected the essential state function of operating a police force. The Court held that the federal government could impose appropriate conditions on the use of federal property and could require state instrumentalities to comply with the conditions that are "reasonably related to the federal interest in particular national projects or programs." *Id.* at 461, 98 S.Ct. at 1164.

A requirement that States, like all other users, pay a portion of the costs of the benefits they enjoy from federal programs is surely permissible since it is closely related to the federal interest in recovering costs from those who benefit and since it effects no greater interference with state sovereignty than do the restrictions which this Court has approved.

---

**5.** *Pollock* thus has lost its importance. As Justice Stevens wrote in *South Carolina v. Regan,*

[w]hile the Court, for a time, did continue to cite *Pollock* either in dicta, ... or only to distinguish it in the course of upholding federal taxes on state instrumentalities, ... it has long since stopped treating *Pollock* with even that much respect; the Court has not cited the holding of *Pollock* since *Gerhardt,* almost half a century ago. As I have suggested above, however, the rationale of *Pollock* had been repudiated at least as early as *Metcalf & Eddy.* Moreover, it appears that the Court has *never* relied on *Pollock* for a holding since the passage of the Sixteenth Amendment. 465 U.S. at 412 n. 10, 104 S.Ct. at 1132 n. 10 (citations omitted); see *Charczuk v. C.I.R.,* 771 F.2d 471, 473 (10th Cir.1985); *Ficalo-*

*ra v. Commissioner of Internal Revenue,* 751 F.2d 85 (2d Cir.1984), *cert. denied,* 471 U.S. 1005, 105 S.Ct. 1869, 85 L.Ed.2d 162 (1985).

**6.** *See Memphis Bank & Trust Co. v. Garner,* 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983); *United States v. Mississippi Tax Comm'n,* 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975); *Gurley v. Rhoden,* 421 U.S. 200, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975); *First Agricultural Bank of Berkshire County v. Tax Comm'n,* 392 U.S. 339, 346–48, 88 S.Ct. 2173, 2177–78, 20 L.Ed.2d 1138 (1968); *Rohr Aircraft Corp. v. County of San Diego,* 362 U.S. 628, 80 S.Ct. 1050, 4 L.Ed.2d 1002 (1960); *Kern-Limerick, Inc. v. Scurlock,* 347 U.S. 110, 74 S.Ct. 403, 98 L.Ed. 546 (1954).

*Id.* at 461–62, 98 S.Ct. at 1164. The Court further stated that

> [w]hatever the present scope of the principle of state tax immunity, a State can have no constitutional objection to a revenue measure that satisfies the three-prong test of *Evansville-Vanderburgh Airport Authority v. Delta Airlines, Inc.* [405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972)]—substituting "state function" for "interstate commerce" in that test. So long as the charges do not discriminate against state functions, are based on a fair approximation of use of the system, and are structured to produce revenues that will not exceed the total cost to the Federal Government of the benefits to be supplied, there can be no substantial basis for a claim that the National Government will be using its taxing powers to control, unduly interfere with, or destroy a State's ability to perform essential services. The requirement that total revenues not exceed expenditures places a natural ceiling on the total amount that such charges may generate and the further requirement that the measure be reasonable and nondiscriminatory precludes the adoption of a charge that will unduly burden state activities.

*Id.* at 466–67, 98 S.Ct. at 1166–67. Although plaintiff is partly correct in stating that the court must determine the burden placed on the state's ability to perform essential services, this court reads *Massachusetts* as applicable only to the levying of a user's fee.

In dealing with the formula in 26 U.S.C. § 86 and the issue of whether intergovernmental tax immunity is applicable, it is important to remember "from the face of the Act that this is the formula which Congress intended to be of general application and that Congress did not consider the application of the formula in the usual case to lay a tax on exempt interest, or to have any such effect, so as to bring the exemption clauses into operation." *United States v. Atlas Ins. Co.,* 381 U.S. 233, 241, 85 S.Ct. 1379, 1384, 14 L.Ed.2d 358 (1965). Here too Congress has no intention of taxing tax-exempt income. The formula created in 26 U.S.C. § 86 is to include all amounts of income from whatever source so as to determine how much of the social security income should be taxed. S.Rep. No. 98–21, 98th Cong., 1st Sess. 26, *reprinted in* 1983 U.S.Code Cong. & Ad. News, 143, 168. Thus, the purpose of section 86 is to devise a more equitable method to tax social security income, thereby strengthening the social security system.[7]

Finally, because defendant submitted a Fed.R.Civ.P. 12(c) motion to dismiss on the pleadings, the court realizes that certain protections are guaranteed the plaintiff.

> A court may not dismiss a complaint on the pleadings unless no set of facts could be adduced to support the plaintiff's claim for relief.... In addition, because judgment on the pleadings results in an early assessment of the merits of plaintiff's action, the plaintiff must be given the safeguard of having all its allegations taken as true and "all inferences favorable to plaintiff will be drawn."...

*Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir.1980) (citations omitted). A rule 12(c) motion will be granted only if the movant establishes that no material issue of fact awaits resolution and that he is entitled to judgment as a matter

---

7. *Reasons for change*

The Committee believes that the present policy of excluding all social security benefits from a recipient's gross income is inappropriate. The committee believes, further, that social security benefits are in the nature of benefits received under other retirement systems, which are subject to taxation to the extent they exceed a worker's after-tax contributions and that taxing a portion of social security benefits will improve tax equity by treating more nearly equally all forms of retirement and other income that are designed to replace lost wages (for example, unemployment compensation and sick pay). Furthermore, by taxing social security benefits and appropriating these revenues to the appropriate trust funds, the financial solvency of the social security trust funds will be strengthened. S.Rep. No. 98–21, 98th Cong., 1st Sess. 25 (1983), *reprinted in* 1983 U.S.Cong. & Ad.News 143, 166.

of law. *Alken v. Lerner*, 485 F.Supp. 871, 873 (D.N.J.1980).

In this case, defendant has shown clearly that no material issue of fact awaits resolution. The intergovernmental tax immunity doctrine has been narrowed to almost the point of non-existence. Established case law clearly shows that the tax immunity is not applicable in this case. Therefore, defendant's motion for reconsideration is granted and judgment on the pleadings in favor of defendant will be entered. An order accompanies this opinion. No costs.