**FEDERAL RESERVE BANK OF RICH-MOND, A United States Corporation, Plaintiff–Appellee,**

v.

**CITY OF RICHMOND, A Virginia Municipal Corporation, Defendant–Appellant.**

No. 90–2097.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1991.

Decided Feb. 26, 1992.

Michael King Jackson, City Atty's Office, Richmond, Va., argued (G. Timothy Oksman, City Atty's Office, on brief), for defendant-appellant.

Christopher Matthew Malone, Thompson & McMullan, Richmond, Va., argued (Charles L. Williams, Thompson & McMullan, on brief), for plaintiff-appellee.

Before WIDENER, Circuit Judge, HILL, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation, and WARD, Senior District Judge for the Middle District of North Carolina, sitting by designation.

OPINION

WIDENER, Circuit Judge:

The City of Richmond (City) appeals the district court's grant of summary judgment in favor of the Federal Reserve Bank of Richmond (Bank). We find that the district court erred in concluding that the City's assessment, under 12 U.S.C. § 531, of penalty and interest charges against the Bank for delinquent payment of real estate taxes was improper. We therefore reverse the district court's grant of summary judgment.

The basic facts giving rise to the present controversy are not in dispute. The Bank maintains its principal offices on approximately seven acres of real estate located at 701 East Byrd Street in Richmond, Virginia. For calendar year 1989, the City assessed the property for purposes of real estate taxation at $66,000,000.00 and calculated that the total tax due was $1,009,-905.91. When the Bank failed to pay this amount by the June 15, 1989 deadline established under local ordinance, the City notified the Bank of the delinquency and assessed a penalty of $100,990.59 for late payment, as well as interest charges. On August 9, 1989, the Bank paid the delinquent $1,009,905.91, but refused to pay the assessed penalty and interest charges.

On January 10, 1990, the Bank filed a complaint in the Eastern District of Virginia seeking a declaration under 28 U.S.C.

§ 2201 that the City's penalty and interest assessment was barred as a matter of law. The parties subsequently filed cross-motions for summary judgment. The district court granted the Bank's motion and ordered that any lien for the City's penalty and interest assessment be expunged. This appeal followed.

■ Under 12 U.S.C. § 531, Federal Reserve banks are "exempt from Federal, State, and local taxation, except taxes upon real estate." The issue presented by this appeal concerns the scope of the Congressional grant of permission to tax property of the United States as to "taxes upon real estate." Specifically, we must determine whether such permission includes interest and late payment charges incurred by the Federal Reserve Bank of Richmond for being delinquent in the payment of real estate taxes.

■ Because section 531 does not itself define "taxes upon real estate," we initially consider the question of whether the interpretation of the statute should be guided by federal or state law. Generally, of course, it is assumed that the interpretation of a federal statute of nationwide application is not dependant on state law. *Jerome v. United States*, 318 U.S. 101, 104, 63 S.Ct. 483, 485, 87 L.Ed. 640 (1943). The Supreme Court, however, has indicated that this assumption of uniformity should not be made with regard to all statutes and recognized that state law may be incorporated as the federal rule of decision. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979); *Reconstruction Finance Corporation v. Beaver County*, 328 U.S. 204, 209–10, 66 S.Ct. 992, 995–96, 90 L.Ed. 1172 (1946).

Indeed, in *Reconstruction Finance Corp. v. Beaver County*, the court specifically addressed a statute in many ways identical to the one at hand, which subjected real property owned by an instrumentality of the United States to local taxation. *Beaver County* was a case in which a subsidiary of the Reconstruction Finance Corporation had set up a manufacturing plant in Pennsylvania to manufacture aircraft propellers and had leased the same, land, plant and equipment, to Curtiss–Wright, the aircraft manufacturer. Under Pennsylvania law, as decided by the Supreme Court of that State, the equipment in the plant, although not affixed to the freehold and which it is obvious would ordinarily be considered personalty, was considered to be real estate because the plant was a manufactory, and without which equipment the plant would not be a manufactory at all. A statute of the United States, section 10 of the Reconstruction Finance Corporation Act, provided that States and local governments were not permitted "to impose taxation of any kind on the ... personal property" but the same section provided that "any real property" of the governmental agency "shall be subject to state, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed." On this set of facts and under the statute just referred to, the Supreme Court held that the real property involved, including the machinery, was subject to the real estate tax of Beaver County. The Court held that "[t]his [the Pennsylvania Supreme Court's] interpretation of Pennsylvania's tax law is binding on us." 328 U.S. at 208, 66 S.Ct. at 995. So the Court held that it must accept the Pennsylvania definition of what constituted real estate. Despite the ordinary assumption that a statute of nationwide application should operate uniformly throughout the nation, the Court held that a federal definition of real property should not be applied. The Court reasoned that in permitting local taxation of the real property, Congress made it impossible to apply the law with uniform tax consequences within each State and locality. The several States, the Court pointed out, and even the localities within them, have diverse methods of assessment, collection, and refunding, and tax rates which vary widely. In view of the express provision for the taxation of real estate, the Court held that the normal assumption that Congress intends its law to have the same consequences throughout the nation could not be made. 328 U.S. at 209, 66 S.Ct. at 995. The Court further pointed out that

had Congress desired nationwide uniformity, it could have required fixed payments in lieu of taxes, as it had done in other statutes.[1] It added that local rules governing what is real property for tax purposes would not impair the Congressional program of the Reconstruction Finance Corporation any more than would the action of Congress in leaving the fixing of rates of taxation to local communities. The Court added that it must be plain that state rules do not effect a discrimination against the government or run counter to the ter to the terms of the statutes involved. It concluded by stating that concepts of real property are deeply rooted in state traditions, customs, habits, and laws, to which is geared local tax administration. To permit the States to tax, and yet to require them to alter their longstanding practice of assessments and collections, would create a kind of confusion and resultant hampering of local tax machinery which the Court was certain Congress did not intend. We see no meaningful distinction between the statute involved in *Beaver County* and the one involved here which permits "taxes upon real estate." Every reason given by the Court to justify the taxing of machinery as real estate by Beaver County applies here to support inclusion of interest and penalties as a part of the real estate tax of the City of Richmond.

The district court, however, did not mention *Beaver County* in its opinion, although that case is on quite similar facts as we have mentioned, and rejected the City's argument that state law should control the interpretation of section 531, relying upon *United States v. Kimbell Foods, Inc.* It largely analyzed the case as a question of sovereign immunity under cases involving claims against the Government such as Title VII and federal tort claims cases, which

it is not, rather than a question of the tax exemption of property owned by the United States or an instrumentality thereof, which involves Congressional intent, the supremacy clause (*M'Culloch v. Maryland,* 17 U.S. [14 Wheat.] 316, 4 L.Ed. 579 [1819]), and Article IV § 3 (the property power) (*Reconstruction Finance Corporation v. Texas*), which it is.[2] We believe that *Kimbell* does not require such a result, because, not only did *Kimbell* adopt State law as the rule of decision, that opinion specifically recognized that the question of "[w]hether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy 'dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.'" 440 U.S. at 728, 99 S.Ct. at 1458 (quoting *United States v. Standard Oil Co.,* 332 U.S. 301, 310, 67 S.Ct. 1604, 1609, 91 L.Ed. 2067 (1947)). As specific considerations to be taken into account by the courts, the Supreme Court mentioned several factors, including whether the federal program in question necessitates formulation of a uniform national rule and whether application of state law would frustrate specific objectives of the federal program. *Kimbell,* 440 U.S. at 728, 99 S.Ct. at 1458. Taking these factors into account, we are of opinion that application of state law is required in this case by *Beaver County.* There is no indication that a uniform national rule with respect to whether penalties and interest constitute a part of real estate taxes is necessary to protect the federal interest underlying the Federal Reserve system. Furthermore, we note that applying state law to determine whether penalties and interest are a part of the tax would not impair the federal interest any more than that interest is impaired by Congress' deci-

1. The Court in *Beaver County,* 328 U.S. at 209 n. 5, 66 S.Ct. at 995 n. 5, referred to a listing of such payments. See, e.g., 42 U.S.C. § 1546, requiring the Secretary of Housing and Urban Development to make payments in lieu of taxes. See also Executive Order 8034, dated January 16, 1939, and especially the appendices thereto, listing various payments in lieu of taxes to the States and political subdivisions.

2. *M'Culloch,* it will be remembered, did not involve real property, but notes on standard form paper which was taxed, and originally did not include real property but has since been construed to include it. See *United States v. County of Fresno,* 429 U.S. 452, 457, 97 S.Ct. 699, 702, 50 L.Ed.2d 683, et seq. (1977); *Rohr Corp. v. San Diego County,* 362 U.S. 628, 633, 80 S.Ct. 1050, 1053, 4 L.Ed.2d 1002 (1960).

sion to leave the fixing of tax rates and assessment procedures to localities. We cannot, in short, attribute to Congress the intent to permit the States and localities to tax the real property of the Federal Reserve banks and yet require them to alter their settled practices concerning the collection of these taxes.[3]

In adopting this position, we are in agreement with the view expressed by the Fifth Circuit in *Reconstruction Finance Corporation v. Texas*, 229 F.2d 9 (5th Cir.), *cert. denied*, 351 U.S. 907, 76 S.Ct. 695, 100 L.Ed. 1442 (1956). But cf. *United States v. Consumers Scrap Iron Corp.*, 384 F.2d 62 (6th Cir.1967). The *Texas* case is almost, if not exactly, on all fours with the case at hand, and construed an analogous section of the Reconstruction Finance Corporation Act, which waived taxation immunity by providing that "any real property of the Corporation ... shall be subject to State, Territorial, county, municipal, or local taxation...." The Fifth Circuit held that "the determination of whether penalties and interests, as such, are part of the ad valorem tax must be governed by the substantive law of the State of Texas." 229 F.2d at 11. The *Texas* case further stated that "it is ... clear by force of the Beaver County decision that the Congressional purpose can best be accomplished by application of settled State rules in determining whether the word 'taxation' as used in Section 8 includes penalties and interest." In view of our agreement with this approach, we now turn to the meaning of "real estate taxes" as developed under the law of Virginia.

In granting the Bank's motion for summary judgment, the district court ordered that "[a]ny lien for penalties and interest imposed against plaintiff by defendant is hereby EXPUNGED." This statement referred to the fact that under Virginia law, there is a lien on real estate for the pay-

ment of taxes and levies. Va.Code Ann. § 58.1–3340. The statute that creates this lien expressly provides that "[t]he words 'taxes' and 'levies' as used in this section include the penalties and interest accruing on such taxes and levies in pursuance of law." Va.Code Ann. § 58.1–3340. Virginia has thereby included penalty and interest assessments within the meaning of "taxes" upon real estate.[4] There is no indication that this Virginia rule was designed to discriminate against the federal government. See *Beaver County*, 328 U.S. at 210, 66 S.Ct. at 995. Having concluded that the application of this settled state rule is proper in this case, we are of opinion that the waiver of tax exemption in section 531 encompasses the interest and late payment charges incurred by the Bank for its delinquent payment of the 1989 assessment.

Accordingly, the district court's order granting the Bank's motion for summary judgment and denying that of the City is reversed. The case is remanded for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

HILL, Senior Circuit Judge, dissenting:

By allowing the Commonwealth's definition of real property to inform the determination of that property which is subject to real property taxes, the Supreme Court in *Reconstruction Finance Corp. v. Beaver County, Pa.*, 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946), did not grant the Commonwealth unlimited authority to classify various charges as real property taxes, thus bringing them within the scope of permissible taxation. The focus of the *Beaver County* opinion is on the assessment of taxes, not their classification. Certainly the Commonwealth of Virginia could not classify the tax imposed upon the income derived from the use of real estate as

---

**3.** Whether the rule be federal or state, there will be no disruption of any commercial relationship predicated on state law, a third factor mentioned by the Court. See 440 U.S. at 728–29, 99 S.Ct. at 1458–59.

**4.** The Bank has recited that Va.Code Ann. § 58.1–3916, the statute that authorizes coun-

ties, cities, and towns to impose penalties and interest on delinquent taxpayers, provides that penalties shall become a part of the tax but makes no similar mention concerning interest. That section does not exclude interest, however, as included in the term taxes, so it does not affect the plain meaning of § 58.1–3340.

a tax on real estate, thereby bringing an income tax within the scope of what Congress has allowed the Commonwealth to tax. Yet the majority concludes that determination of whether penalties and interest are part of the Commonwealth's real estate tax "must be governed by the law of the State." [1]

To the extent that federal courts are instructed by *Beaver County* to look to the state law to find out the amount of real estate tax that may be payable, we should, of course, do just that. There would be no way for the government to pay a state real estate tax without first consulting the state laws to find out if such a tax is exacted and how much is imposed. Yet, when this is done, the answer obtained is the federal answer to a federal question—the interpretation of a federal statute.

> When the United States ... pays its debts, it is exercising a constitutional function or power.... The authority [to require the United States to do so] ha[s] its origin in the ... statutes of the United States and [is] in no way dependant on the laws [of any State]. The duties imposed upon the United States ... find their roots in the same federal source[ ]. In the absence of an applicable Act of Congress, it is for the federal courts to fashion the governing rule of law according to their own standards.

*United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979) (quoting *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366–367, 63 S.Ct. 573, 574–75, 87 L.Ed. 838 (1943)). The Federal Reserve Bank (FRB) clearly performs a federal function within the meaning of *Kimbell.* Likewise, it is only through an Act of Congress that the States are permitted to impose a real estate tax upon the FRB. When government activities "aris[e] from and bea[r] heavily upon a federal ... program, the Constitution and Acts of Congress *require otherwise than that state law govern of its own*

*force." Kimbell,* 440 U.S. at 727, 99 S.Ct. at 1457 (emphasis added); *see United States v. Little Lake Misere Land Co.,* 412 U.S. 580, 592, 593, 93 S.Ct. 2389, 2396, 2397, 37 L.Ed.2d 187 (1973). Federal law, therefore, ought to determine whether the Commonwealth may impose its penalties and interest under the guise of real estate taxes.

Uniformity in a nationwide federal program is desirable and controlling federal rules ought to be fashioned. *See Kimbell,* 440 U.S. at 728, 99 S.Ct. at 1458. Congress normally intends uniformity in the application of its laws in order that federal programs may operate unimpaired. *See Beaver County,* 328 U.S. at 209, 66 S.Ct. at 995. The majority opinion relies upon *Beaver County* in concluding that the diverse nature of local tax assessment and collection methods renders impossible the assumption that Congress intended nationwide uniformity in allowing the imposition of real property state taxes. This may be so for purposes of assessment, but uniformity has not previously been and is not now impossible to obtain with regard to interest and penalties.

The imposition of penalties and interest seems designed, primarily, to coerce the taxpayer into paying the tax when due. At first glance, this appears to be so related to the tax that it might be classified as a part of the tax. A second glance, however, and we are reminded that the government pays the tax only at its own election. I see no point in the government's being willing, as a volunteer, to pay the tax and being willing, also, to be coerced into doing what it does only because it is willing to do so. While I am not prepared to say that the Second Branch is not capable of allowing for this, I am unwilling to assume that it has so provided in the present case.

In the absence of an express statutory provision providing otherwise, it is a "well-settled principle that the United States are

---

1. One might find it satisfactory to leave it to the state to set the tax and to classify it, because what it does applies to its citizens (electorate) who can defend themselves—and, incidentally, the federal taxpayer—at the ballot box. However, citizen interest in classification is not the equivalent of citizen interest in imposition. The citizen must pay the tax however it is classified; the federal institution is willing to pay only that tax properly classified as real estate tax.

not liable to pay interest on claims against them." *Library of Congress v. Shaw,* 478 U.S. 310, 315, 106 S.Ct. 2957, 2962, 92 L.Ed.2d 250 (1986) (quoting *United States ex rel. Angarcia v. Bayard,* 127 U.S. 251, 260, 8 S.Ct. 1156, 1160, 32 L.Ed. 159 (1888)).[2] For well over a century, federal courts, executive agencies and the Congress have recognized that federal statutes are not read to permit interest to run on recovery from the government unless an Act of Congress affirmatively mandates such interest. Without such a mandate, the Commonwealth is powerless surreptitiously to impose penalties and interest. *See Shaw,* 478 U.S. at 316, 106 S.Ct. at 2962; *United States v. N.Y. Rayon Importing Co.,* 329 U.S. 654, 660, 67 S.Ct. 601, 604, 91 L.Ed. 577 (1947) ("Had Congress desired to permit the recovery of interest [in this situation], it could have so provided. The absence of such a provision is *conclusive evidence* that the court lacks any power of that nature" (emphasis provided)). No Act of Congress grants the Commonwealth authority to impose interest and penalties upon the FRB for its delinquent payment of real property taxes. Had Congress intended for the power to impose real property taxes to include penalty and interest assessments, it specifically would have so provided. Absent such provision, it is conclusive that the Commonwealth may not charge that which only the Congress may impose. The power to assess penalties and interest does not implicitly exist within the power to collect property taxes. Where Congress allows recovery from the government, that grant of authority must be narrowly construed. *See Shaw,* 478 U.S. at 318, 106 S.Ct. at 2963; *N.Y. Rayon Importing Co.,* 329 U.S. at 659, 67 S.Ct. at 604 ("The consent necessary to waive the traditional immunity [from interest charges] must be express and it must be strictly construed").

Uniformity in this area has existed for the past century: Unless Congress desig-

nates otherwise, penalties and interest are not recoverable from the government. I see no reason why a different result should obtain here by deferring to the Commonwealth's classification of penalties and interest as real property taxation. A thorn by any other name still carries the same barb. I respectfully dissent.

**2.** This quote is made in reference to the interest which is attached to the recovery of monetary damages from the government. This situation is analogous to the coercive nature of the penalty and interest which the Commonwealth seeks to attach to the FRB's delinquent real property taxes. In concluding that uniformity is not achievable in implementing Congress' grant of authority to impose local real property taxes, the majority's use of case law focusing on real property assessment does not address this parallel.