**TEXAS EASTERN TRANSMISSION CORPORATION, Plaintiff,**

v.

**Konstantinos GIANNARIS and Tina Giannaris, his wife, Defendant.**

**Civ. A. No. 1:CV–93–0248.**

United States District Court,
M.D. Pennsylvania.

April 7, 1993.

---

Charles W. Rubendall, II, Keefer, Wood, Allen and Rahal, Harrisburg, PA, for plaintiff.

Spero T. Lappas, Harrisburg, PA, for defendants.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is Plaintiff's motion for a preliminary injunction and Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). A hearing was held on March 13, 1993, and subsequently briefs were submitted on the issue of whether this court has subject matter jurisdiction over the captioned action. The matter is now ripe for disposition.

*Discussion*

### I. Findings of Fact

1) Plaintiff Texas Eastern Transmission Corporation is a Delaware corporation, registered to do business in Pennsylvania, with its principal place of business in Texas. Plaintiff operates natural gas pipelines, several of which run through Pennsylvania.

2) Plaintiff is the successor in interest to Texas Eastern Penn–Jersey Transmission Corporation ["Penn–Jersey"].

3) Defendants Konstantinos and Tina Giannaris are Pennsylvania residents who own a parcel of property in Perry County, Pennsylvania.

4) Penn–Jersey purchased from Benjamin and Sara Graybill three right-of-way grants in 1954, 1958, and 1960. These grants gave the Graybills the right to maintain and operate the pipelines laid in the right-of-way. The parties do not dispute the legality of these grants.

5) All three grants provide the following:

the said Grantor does hereby Grant, Bargain, Sell, Convey and Warrant unto Texas Eastern Penn–Jersey Transmission Corporation, a Delaware Corporation (herein styled Grantee), its successors and assigns, a right of way and easement to construct, lay, maintain, operate, alter, repair, remove, change the size of, and replace pipe lines and appurtenances thereto (including without limitation Corrosion Control equipment) for the transportation of oil, gas, petroleum products or any other liquids, gases, or substances which can be transported through pipe lines, the Grantee to have the right to select [text crossed out] the route under, upon, over and through lands which the undersigned owns or in which the undersigned has an interest ...

6) Defendants purchased the Graybill property.

7) Four of Plaintiff's pipelines, parallel to one another, traverse Defendants' property.

8) Three routes are available to reach the pipelines on Defendants' property:

i. Plaintiff may travel up Township Road and turn left on Barnette Drive. Barnette Drive runs approximately perpendicular to the pipelines. Plaintiff then would proceed through Ms. Anna Cook's property along the pipeline, over several streams, and across a barbed wire fence. The distance from Barnette Drive to the barbed wire fence is approximately three eighths of one mile. Defendants do not object to removal of this fence, but are unsure if they own it. The streams are approximately six to twelve inches in depth; they could be crossed by a four wheel drive vehicle.

ii. Plaintiff could travel up Township Road and turn left on the private lane. The lane runs approximately perpendicular to the subject pipelines. Plaintiff would then cross a small bridge, traverse Defendants' property and then pass around, or through, a fence which lies to the right of the lane. The wooden bridge can not support extremely heavy equipment, but will support pickup trucks.

iii. Plaintiff could go over the mountain, ending up on Defendants' property. This route is about two to three miles in length, is often not accessible and traverses steep inclines.

9) The private lane serves five families who own land in the proximity of the disputed area. Some of the families live on the close side, some on the far side, of the pipelines.

10) The fence off the lane which blocks access to the pipelines was built by agreement by Plaintiff and Defendants to keep out four wheel vehicles from the right-of-way.

11) A locked gate is built into this fence. Plaintiff does not have a key to this lock.

12) The mountain and Barnette Drive routes are longer than using the lane to reach the pipelines.

13) Plaintiff used the lane continually until 1988.

14) Defendants forbid Plaintiff from driving around the locked gate, claiming that that would constitute illegal trespass.

15) The pipeline transports natural gas in a vapor state; this substance is highly flammable and can be both auto- and pilot-ignited.

16) Several means of inspection are utilized in maintaining the pipelines.

17) Aerial inspections, from a very low altitude, are performed, at the minimum, monthly, with the goal of being performed weekly. These inspections are used to detect construction, floods, erosion, or dead vegetation, which may cause, or be indicators of pipeline damage.

18) To determine where pipelines are located, aerial inspections rely on colored posts and mowing lines.

19) Plaintiff also conducts annual pipeline surveys to detect corrosion in the pipelines.

20) Test sites are set up along the pipeline, at intervals less than a mile apart. Each site contains a pipe and wire fixture used for an electrical current analysis which detects corrosion. If the test fails, the site is repaired, and the test is repeated.

21) A site is located on Defendants' property next to the lane. Last year this site was tested and showed problems. Repairs to it

are necessary prior to the annual inspection. However, they have not been made because Plaintiff has not had access to the test site.

22) Every ten years, a close interval survey is performed by Plaintiff. This test, which takes place every five feet along the pipeline, uses a machine that probes into the ground, detecting natural gas leakage. The test requires that brush be removed over the pipeline so that the probe can be properly used.

23) The subject right-of-way is not sufficiently cleared of brush so that the close interval test can be performed. This area is due for this test this year.

24) The right-of-way is overgrown with heavy brush and trees, many of which are ten to fifteen feet in height.

25) Plaintiff mows the pipelines on a three year cycle.

26) The right-of-way on Defendants' property is overdue for its mowing.

## II. Subject Matter Jurisdiction

### A. Introduction

■ The statute granting federal district courts subject matter jurisdiction over diversity cases provides, in part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

(1) Citizens of different States.

28 U.S.C. § 1332.

Plaintiff seeks only injunctive relief. Thus, the question before the court is how to measure the value of that relief to determine if the minimum amount in controversy is met.

Plaintiff asserts that an injunction is necessary to inspect and maintain the four pipelines traversing Defendants' property, and that a failure to do so could result in a catastrophe—both to the environment and human life. Thus, Plaintiff asserts that the value in obtaining the injunction must be valued by the potential catastrophic harm that could result if inspection and maintenance of the pipeline is impeded. Defen-

dants contend that this valuation is purely speculative, thus not satisfying the burden that one bears to show that jurisdiction properly lies in this court.

### B. Standard

■ Judicial doctrine has established that jurisdictional statutes are to be strictly construed; therefore, the party seeking federal jurisdiction bears the burden of showing that such jurisdiction exists. *Gibbs v. Buck,* 307 U.S. 66, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939). However, a court should not refuse jurisdiction due to an insufficient amount in controversy unless "it ... appear[s] to a legal certainty that the claim is really for less than the requisite jurisdictional amount ..." *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

■ In an action for injunctive relief, the amount in controversy is measured by the value of the interest sought to be protected by the equitable relief requested. *Bryfogle v. Carvel Corp.,* 666 F.Supp. 730, 732 (E.D.Pa.1987). The standard utilized in such cases is flexible. Thus, "the courts appear willing to ease the plaintiff's burden of proving jurisdiction" in cases involving injunctive relief. *Taylor v. Sandoval,* 442 F.Supp. 491, 495 (D.Colo.1977), citing *Sanchez v. Taylor,* 377 F.2d 733, 736 (10th Cir.1967) and *Martinez v. Richardson,* 472 F.2d 1121 (10th Cir.1973).

### C. Amount in controversy

A few cases have addressed whether jurisdictional amounts are satisfied where injunctive relief is sought to protect an easement. For example, in *Williams Pipe Line Co. v. Mounds View,* 651 F.Supp. 544 (D.Minn. 1986), a pipeline accident resulted in the defendant city seeking to enjoin the plaintiff pipeline company from resuming testing or operation of the pipeline; the company also sought to enjoin the city from interfering in its efforts. *Id.* at 546. The court reasoned that the jurisdictional amount had been satisfied:

Ramsey County seeks to protect its property interest in its right of way; it is

unquestionable that this property right is worth far in excess of $10,000. Mounds View asserts an action based on public nuisance; it seeks to protect the safety and property of its citizens. The rights at stake are worth in excess of $10,000.

*Id.* at 547. While the court did find that the actual value of the disputed property exceeded $10,000, it did not specifically address what that value was, or include appraisal values of the property, and more importantly to the present discussion, the court also gave import to the value of human life and property in its calculation of the jurisdictional amount.

Another helpful case, from the Southern District of Ohio, involved a gas company seeking to enjoin a resident from placing a shed on an easement, and a developer seeking a declaratory judgment to interpret that easement. *Swango Homes, Inc. v. Columbia Gas Transmission Corp.*, 806 F.Supp. 180 (S.D.Ohio 1992). The court, first addressing the question of whether it had subject matter jurisdiction over the action, concluded that the pipeline company was required by federal law to comply with the Natural Gas Pipeline Safety Act, that a failure to so comply would require that the company shut down its pipeline, and that that would result in loss of revenue and removal of the pipeline, together which would cost the defendant in excess of $50,000. *Id.* at 184.

The court in *Swango Homes* had the benefit of testimony on the specific financial loss resulting from a shutdown of the pipeline if the defendants failed to comply with the regulations. While no such testimony was presented at the preliminary injunction hearing in the case at bar, the court is not persuaded that this deficiency is fatal to the finding of subject matter jurisdiction.

Defendants contend that Plaintiff's valuation of their right is purely speculative. It is true that the physical and environmental catastrophe that could result from an improperly maintained pipeline is "merely" speculative. However, the enormity of such a disaster, even if but conjectural, was the driving force behind both the federal regulations governing gas pipelines, and the comprehensiveness of the relevant grants which specifi-

cally assign the grantee a right of maintenance.

Defendants assert that Plaintiff lacks standing to include the public interest in valuing their right to access. Apart from the fact that public interest is one of the factors a court *must* consider in granting injunctive relief, *see Ecri v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987), this court agrees with the reasoning of *Williams Pipe Line Co.* that a pipeline company does have an interest in protecting the safety and property of the public. *Id.* at 547. Plaintiff not only would face civil liability if its pipelines are not properly operated and maintained, it could also face financial loss if not permitted to operate because of a failure to abide by the federally mandated regulations.

The court concludes that Plaintiff has demonstrated by a preponderance of the evidence that the value of the right-of-way, the public interest in safety, and the costs which Plaintiff would incur if the pipelines were closed in combination, exceed the jurisdictional amount of $50,000. Therefore, this court finds that it has subject matter jurisdiction over the captioned action and may proceed to the merits of this case. Defendants' motion to dismiss will be denied.

## III. Preliminary Injunction

■ The movant in a preliminary injunction motion has:

> the burden of producing evidence to convince the court that (1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably injured by denial of relief; (3) granting preliminary relief will not result in even greater harm to the other party; and (4) granting preliminary relief will be in the public interest.

*Ecri v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987). All four of these factors have been met by Plaintiff.

First, Plaintiff has shown a reasonable probability of succeeding on the merits of his claim. The parties do not dispute the validity of the Plaintiff's grant to the right-of-way across Defendants' property. There is, however, a dispute as to whether Defendants

have been impeding Plaintiff's use of this easement. The grant provides:

> the said Grantor does hereby Grant ... Penn–Jersey ... a right of way ... to construct ... maintain ... and replace pipe lines ... (including without limitation Corrosion Control equipment) ... the Grantee to have the right to select [text crossed out] the route ... through lands which the undersigned owns ...

Defendants argue that they are not denying Plaintiff access to the right-of-way. They contend that alternative routes are available to Plaintiff to access the pipelines. Specifically, Defendants assert that Plaintiff could use Barnette Drive, follow the pipeline traversing Ms. Cook's property, cross the streams and barbed wire fence, and arrive at the pipeline on Defendants' property. They could also use the route over the mountain.

This argument is unpersuasive. The grant very specifically gives Plaintiff to ·right to select that avenue of access which it chooses. Defendants have no legally meritorious argument why Plaintiff may not utilize the private lane leading to the right-of-way, the lane which Plaintiff continually used until 1988.

Defendants also assert that Plaintiff has no right to a key for any gates that may be located on Defendants' property. The court finds that the disputed fence with its locked gate was installed by the mutual agreement of Plaintiff and Defendants; there has been no finding that Defendants "own" this fence. Also, the pertinent grants specifically provide Plaintiff with "the right to select [text crossed out] the route ... through lands which the undersigned owns ..." Plaintiff selects use of the lane, and passage through the fence; Defendants have no legally cognizable defense to impeding this choice.

During the preliminary injunction hearing, Defendants alluded to the argument that permission by all five families is necessary for the lane's use; no evidence that this is necessary came forward, however.

Defendants also argue that they are willing to permit Plaintiff access to the lane providing that Plaintiff assist in the upkeep of that road. However, no such condition is set forth by the grant, and none will be read into it.

■ Defendants finally argue that Plaintiff is not entitled to mow and clear the right-of-way. However, the grant clearly gives Plaintiff the right to maintain the right-of-way in which the pipelines are laid. While the grant does not specify the scope of "maintenance," keeping the area clear, as required for inspections and by common sense, is within the parameter of Plaintiff's rights.

The second prong of the preliminary injunction test is also met. Plaintiff will be irreparably harmed if Defendants continue to deny them access to the pipeline. Without proper inspections and maintenance, Plaintiff's pipeline poses a very serious threat of danger to both the public and the environment. Also, failure to conduct inspections would run afoul of federally mandated regulations, set forth in 49 C.F.R. 190–199, enacted by the United States Department of· Transportation pursuant to the Natural Gas Pipeline Safety Act, 49 U.S.C.App. § 1671, *et seq.* These comprehensive regulations not only set forth specific requirements for pipe design, *see* §§ 192.101–192.125, materials, *see* §§ 192.51–192.65, testing, *see* §§ 192.501–192.517, operating, *see* §§ 192.601–192.629, and maintenance, *see* §§ 192.701–192.731, but also strict enforcement policies, which include civil penalties, *see* §§ 190.221–190.227, along with the threat of criminal prosecution, *see* §§ 190.229–190.231.

Third, there is no indication that Defendants will be injured by granting Plaintiff's request for injunctive relief. They may not particularly relish the idea that some of their property will be mowed against their wishes, or that strangers will have access to their parcel of land. Nonetheless, when they purchased their property, they were well aware of Plaintiff's right-of-way traversing their land and so they were cognizant of the inconveniences this would entail.

Fourth, granting injunctive relief will be in the public interest. Enjoining Defendants from impeding Plaintiff's access to the pipelines will further the federally protected goal that gas lines be adequately tested and maintained. Moreover, an injunction will protect human life and the environment from the

potential catastrophe that could result if the subject pipelines are not adequately maintained and inspected.

In conclusion, Plaintiff has satisfied the four prongs necessary to obtain injunctive relief. Plaintiff's motion for a preliminary injunction will be granted. An appropriate order will be issued.

## ORDER

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED:**

(1) Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is **DENIED.**

(2) Plaintiff's motion for a preliminary injunction is **GRANTED.**

(a) Defendants are prohibited from interfering in any way with Plaintiff's right to access the pipelines.

(b) Defendants will permit Plaintiff to mow and clear the right-of-way.

(c) Defendants will permit Plaintiff access to the pipeline so that they can conduct their annual and close interval tests and repair the test site located next to the lane.

(d) Defendants will permit Plaintiff to use the lane leading to the pipeline so long as Plaintiff uses the lane only in connection with the exercise of its rights provided by the aforesaid grants and pursuant to its maintenance and operation (including inspection, mowing, and clearing) of the pipelines laid in the right-of-way.

(e) Defendants are responsible for cutting off the lock currently on the gate next to the lane, or providing Plaintiff with a key to that lock.

3) No later than April 15, 1993, Plaintiff shall show cause why this case should not be closed.