[No. B110876. Second Dist., Div. Seven. Oct. 7, 1997.]

SOUTHERN CALIFORNIA GAS COMPANY, Plaintiff and Appellant, v. CALIFORNIA OCCUPATIONAL SAFETY AND HEALTH APPEALS BOARD, Defendant and Respondent;
DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, Real Party in Interest and Respondent.

COUNSEL

Woodrow D. Smith and David B. Reeves for Plaintiff and Appellant.

Robert H. Murray for Defendant and Respondent.

Michael D. Mason and Albert C. Cardenas for Real Party in Interest and Respondent.

OPINION

WOODS, J.—Southern California Gas Company appeals from a judgment of the superior court denying its application for writ of mandate to compel respondent California Occupational Safety and Health Appeals Board to set aside its decision to impose a penalty upon appellant after two of appellant's employees were injured attempting to vent natural gas from an interstate pipeline. Appellant contends that all safety regulation relating to interstate natural gas pipelines has been preempted by the Natural Gas Pipeline Safety Act, 49 United States Code section 60101 et seq., including occupational safety regulation. We agree, and reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant was cited by the California Department of Industrial Relations, Division of Occupational Safety and Health (the Division) on June 17, 1992, after two of appellant's employees were injured attempting to vent a gas line with a water hose. The employees lost control of the hose, which was thrown about by the pressure of the gas, hitting them and causing their injuries. Appellant had originally been cited for a violation of section 3300, subdivision (c) of California Code of Regulations, title 8 (industrial relations), which regulates the use of steam and air hoses. The citation was amended at the administrative hearing before an administrative law judge, held on May 12, 1993, to a violation of California Code of Regulations, title 8, section 3328, subdivision (a), a miscellaneous safe practices regulation, which provides: "Machinery and equipment shall be of adequate design and shall not be used or operated under conditions of speeds, stresses, or loads which endanger employees."

In its appeal to the Occupational Safety and Health Appeals Board (Appeals Board), appellant argued that federal law preempted the enforcement of safety regulations by the Appeals Board, and that it therefore had no

jurisdiction to impose a penalty upon it for a violation of any occupational health and safety regulations. On June 25, 1992, shortly after the accident, appellant was served by the United States Department of Transportation with a "Notice of Probable Violation and Proposed Civil Penalty," due to its failure to report the incident as required by 49 Code of Federal Regulations, section 191.5 (1996). The California Public Utilities Commission investigated the matter, and no citation was issued.[1]

The Appeals Board rejected appellant's jurisdictional argument and affirmed the decision of the administrative law judge on October 6, 1995. Appellant petitioned the superior court for a writ of mandate pursuant to Code of Civil Procedure section 1094.5 on the ground that the Division had no jurisdiction. The matter was tried, and the trial court denied the petition by minute order filed September 26, 1996. Appellant filed its notice of appeal on March 24, 1997.[2]

## DISCUSSION

Appellant contends that all state regulation relating to the safety of interstate natural gas pipelines, including those designed to maintain safety in the workplace, has been preempted by Congress in the Natural Gas Pipeline Safety Act (NGPSA), 49 United States Code section 60101 et seq., which gives the Department of Transportation the responsibility to prescribe minimum safety standards for pipeline transportation.[3] (49 U.S.C. § 60102.) The NGPSA applies to both intrastate and interstate pipelines, but permits the states to adopt additional or more stringent safety standards for intrastate pipeline facilities, if done under specified conditions. (49 U.S.C. § 60104(c).) The act expressly preempts state regulation relating to the safety of interstate pipelines: "A State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation." (*Ibid.*)

Respondent contends that the express preemption provision of the NGPSA applies only to regulations relating to the safety of the public in general, and

---

[1] The Public Utilities Commission is the enforcement agent of the Department of Transportation. (See 49 U.S.C. § 60107; *ANR Pipeline Co.* v. *Iowa State Commerce Com'n* (8th Cir. 1987) 828 F.2d 465, 470.)

[2] The minute order directed counsel for respondent to prepare a judgment, but this was not done. After the parties were notified by the clerk of this court that no judgment had been entered, appellant caused judgment to be entered in superior court. We treat the premature notice of appeal as filed immediately after the entry of judgment. (See Cal. Rules of Court, rule 2(c).)

[3] Both parties refer to the NGPSA as appearing at 49 United States Code section 1672 et seq. The act was revised and renumbered as 49 United States Code section 60101 et seq. in 1994. The renumbered sections do not correspond verbatim to the old.

not to occupational health and safety regulations designed to protect employees in the workplace. Respondent also contends that we must review for an abuse of discretion, although it agrees that the sole question before us is one of law. ■ Since the sole issue on appeal is the interpretation of a statute, we exercise independent judgment and give no deference to the trial court's determination of issues of law. (*County of San Diego* v. *State of California* (1997) 15 Cal.4th 68, 109 [61 Cal.Rptr.2d 134, 931 P.2d 312].)

■ Although express preemptive language establishes that Congress intended to preempt at least some state law, it is still necessary to "identify the domain" expressly preempted by the statutory language, by determining its scope. (*Medtronic, Inc.* v. *Lohr* (1996) 518 U.S. 470, __ [116 S.Ct. 2240, 2250, 135 L.Ed.2d 700].) A determination of the scope of an express preemption statute begins with an analysis of its text, considered in context with the structure and purpose of the statute and its surrounding regulatory scheme. (518 U.S. at p. __ [116 S.Ct. at p. 2251].) A statute which would preempt state health and safety regulation is narrowly construed to include within its scope only matters which are consistent with "a fair understanding of congressional purpose." (*Id.*, at p. __ [116 S.Ct. at p. 2250].)

■ The text of the NGPSA preemption provision is very broad. (See 49 U.S.C. § 60104(c).) The authority granted to the Department of Transportation to prescribe minimum safety standards for pipeline transportation and for pipeline facilities, is expressed in equally broad terms: "The standards— [¶] (A) apply to . . . owners and operators of pipeline facilities; [¶] (B) may apply to the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipeline facilities; and [¶] (C) shall include a requirement that all individuals responsible for the operation and maintenance of pipeline facilities be tested for qualifications and certified to operate and maintain those facilities." (49 U.S.C. § 60102(a)(1).) The standards must be designed to "meet the need for gas pipeline safety." (49 U.S.C. § 60102(b).) In setting the standards, the Secretary of Transportation must consider all relevant available information on gas pipeline safety, the appropriateness and reasonableness of the particular standard, and "the extent to which the standard will contribute to public safety and the protection of the environment." (*Ibid.*) In addition, the standards must include the requirement that a gas pipeline facility operator participate in a public safety program to protect against hazard caused by demolition, excavation, tunneling, or construction. (49 U.S.C. § 60102(c).)

The regulations relating to natural gas pipelines were promulgated by the Department of Transportation's Office of Pipeline Safety Operations, and

are found in title 49 of the Code of Federal Regulations, parts 190, 191, and 192 (1996). Part 190 prescribes procedures for investigation and enforcement, and for the adoption of regulations. (49 C.F.R. §§ 190.1, 190.201, 190.301 (1996).) Part 191 "prescribes requirements for the reporting of incidents, safety-related conditions, and annual pipeline summary data . . . ." (49 C.F.R. § 191.1 (1996).) Part 192 "prescribes minimum safety requirements for pipeline facilities and the transportation of gas . . . ." (49 C.F.R. § 192.1 (1996).) It includes minimum requirements for the selection of pipe and components used in pipelines, including details of their design, chemical make-up, and construction, with references to standardized industry specifications. (49 C.F.R. § 192.51 et seq. (1996).) Part 192 also "prescribes minimum requirements for the operation of pipeline facilities" (49 C.F.R. § 192.601) and for the "maintenance of pipeline facilities." (49 C.F.R. § 192.701 (1996).) It sets forth operating and maintenance procedures, and requires each pipeline operator to prepare a manual of written procedures for conducting operations and maintenance, which must include procedures for safety during operations and maintenance, including procedures for operating, maintaining, and repairing the pipeline in accordance with the procedures prescribed in the operations and maintenance provisions of the regulations. (49 C.F.R. § 192.605(a), § 192.605(b)(1) (1996).) The manual is subject to inspection by the Department of Transportation whenever requested. (49 U.S.C. § 60102(d)(4).)

The language of the preemption statute is clear enough, but when read in light of the extensive and detailed regulatory scheme, it does not appear that Congress intended to permit the states to regulate the design or use of any part of an interstate natural gas pipeline or the equipment used to maintain it, whether the purpose of the state is to protect the public at large or the pipeline workers in particular. When federal law so thoroughly occupies a legislative field by a pervasive and complex regulatory system, it is reasonable to infer that Congress intended to leave no room for the states to supplement it. (*Fidelity Federal Sav. & Loan Ass'n* v. *de la Cuesta* (1982) 458 U.S. 141, 153 [102 S.Ct. 3014, 3022, 73 L.Ed.2d 664].) However, because it is assumed that the historic police powers of the states are not superseded by federal law unless it is the clear and manifest purpose of Congress (see *Pacific Gas & Elec.* v. *Energy Resources Com'n* (1983) 461 U.S. 190, 206 [103 S.Ct. 1713, 1723, 75 L.Ed.2d 752]), we will consider additional indicia of congressional intent.[4]

Both the Appeals Board and the trial court refused to consider federal court authorities which had considered preemption issues in relation to the

---

[4]The Appeals Board discerned congressional intent from House of Representatives Report No. 1390, 90th Congress, Second Session (1968), which contained, among its many pages, a comment that NGPSA was needed to improve public safety. As appellant has pointed out, the

NGPSA, because federal authorities are not binding on California courts. (See *Rohr Aircraft Corp.* v. *County of San Diego* (1959) 51 Cal.2d 759, 764 [336 P.2d 521], reversed on other grounds in *Rohr Aircraft Corp.* v. *County of San Diego* (1960) 362 U.S. 628 [80 S.Ct. 1050, 4 L.Ed.2d 1002].) ■ Although they are not binding, decisions of the lower federal courts are entitled to great weight on questions of federal law. (*Conrad* v. *Bank of America* (1996) 45 Cal.App.4th 133, 150 [53 Cal.Rptr.2d 336].) ■ At least three federal appeals courts have held that the Natural Gas Pipeline Safety Act completely preempts the field of pipeline safety. (See, e.g., *National Fuel Gas Supply* v. *Public Service Com'n* (2d Cir.1990) 894 F.2d 571, 577; *ANR Pipeline Co.* v. *Iowa State Commerce Com'n, supra,* 828 F.2d at p. 470; *Natural Gas Pipeline Co.* v. *Railroad Com'n of Tex.* (5th Cir. 1982) 679 F.2d 51, 54.) Several federal trial courts have recognized the preemption, as well. (See, e.g., *Swango Homes* v. *Columbia Gas Transmission* (S.D. Ohio 1992) 806 F.Supp. 180, 184, fn. 2; *Northern Border Pipeline Co.* v. *Jackson Cty, etc.* (D.Minn. 1981) 512 F.Supp. 1261, 1263-1264; *United Gas Pipeline Co.* v. *Terrebonne Parish Police Jury* (E.D.La. 1970) 319 F.Supp. 1138, 1142.) The Eighth Circuit concluded that "Congress intended to preclude states from regulating *in any manner whatsoever* with respect to the safety of interstate transmission facilities," and in so doing, Congress has left " '*nothing* to the states with respect to regulation and control' of interstate pipeline safety." (*ANR Pipeline Co.* v. *Iowa State Commerce Com'n, supra,* 828 F.2d at pp. 469-470, italics added.)

Respondent argues that these federal cases are not persuasive because they did not involve the states' power to regulate occupational health and safety. Although the cases did not involve either state or federal Occupational Safety and Health Administration (OSHA) regulations, they arose under diverse circumstances. In *National Fuel Gas Supply,* the state was not permitted to require a certificate of environmental compatibility prior to construction of an interstate gas facility. (894 F.2d at p. 574.) In *ANR Pipeline Co.,* a state was not permitted to require the filing of detailed plans prior to construction. (828 F.2d at pp. 466-467.) In *Swango Homes,* a gas company was held to have the right to maintain an easement without interference. (806 F.Supp. at p. 186.) In *Northern Border,* the court refused to enforce the state's building code requirement of a six-foot depth for pipelines. (512 F.Supp. at p. 1262.) *United Gas Pipeline Co.* also involved a state's building restrictions. (319 F.Supp. at p. 1139.)

In *Natural Gas Pipeline Co.* v. *Railroad Com'n of Tex.,* an argument was made, like here, that because the *purpose* of the local regulation was

---

report also cites the accidental death of several pipeline workers as one of several examples illustrating the need for federal regulation. We find no particular significance in either isolated comment. The report speaks primarily to "pipeline safety."

different, it was not preempted. (679 F.2d at p. 54.) The local regulation did not prescribe design, operation or maintenance procedures, as in the instant case, but merely required a warning system to protect the public in case of accidental release of hydrogen sulfide. The court held that a difference in purpose was irrelevant, citing *Florida Avocado Growers* v. *Paul* (1963) 373 U.S. 132, 142 [83 S.Ct. 1210, 1217, 10 L.Ed.2d 248], in which the Supreme Court, discussing preemption in relation to a different statutory scheme, stated: "The test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives." The court put it more forcefully in *Gade* v. *National Solid Wastes Management Ass'n* (1992) 505 U.S. 88 [112 S.Ct. 2374, 120 L.Ed.2d 73]: " 'We can no longer adhere to the aberrational doctrine . . . that state law may frustrate the operation of federal law as long as the state legislature in passing its law had some purpose in mind other than one of frustration. Apart from the fact that it is at odds with the approach taken in nearly all our Supremacy Clause cases, such a doctrine would enable state legislatures to nullify nearly all unwanted federal legislation by simply publishing a legislative committee report articulating some state interest or policy—other than frustration of the federal objective—that would be tangentially furthered by the proposed state law . . . . [A]ny state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause.' [Citations.] . . . ." (505 U.S. at pp. 105-106 [112 S.Ct. at p. 2387].)

Appellant contends that the Third Circuit, in a matter which did not involve state regulation, has held that the NGPSA must prevail over occupational safety regulations. (*Columbia Gas of Pennsylvania, Inc.* v. *Marshall* (3d Cir. 1980) 636 F.2d 913, 918.) However, that court did not rely on the NGPSA preemption statute. Its holding turned on the preemption provision of the Occupational Health and Safety Act at 29 United States Code section 653(b)(1), which provides: "Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies, and State [OSHA] agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." The court found that the particular OSHA standard at issue covered the same working condition regulated by the Department of Transportation. (636 F. 2d at p. 915.) The court concluded that the federal OSHA did not have jurisdiction over the welding of a natural gas pipeline. (636 F. 2d at p. 919.)

Federal OSHA jurisdiction is not at issue here, and state OSHA regulation is not subject to the same limitations as the federal OSHA. (See *United Air*

*Lines, Inc.* v. *Occupational Safety & Health Appeals Bd.* (1982) 32 Cal.3d 762, 773 [187 Cal.Rptr. 387, 654 P.2d 157].) "Fed/OSHA reached the same conclusion in a 1978 Program Directive: '. . . [653(b)(1)] limitations are strictly binding only on the Federal program. Therefore, a state may choose to exercise greater jurisdiction under its own law than is allowed to Federal OSHA. Any maximum limitation on State jurisdiction would be determined under that State law and other Federal law and applicable court decisions.' (Program Directive No. 77-5 (Oct. 30, 1978).)" (*United Air Lines, Inc.* v. *Occupational Safety & Health Appeals Bd., supra,* 32 Cal.3d at p. 773, fn. 10.)

The issue before the Supreme Court in *United Air Lines* was whether the Federal Aviation Administration (FAA) or the state Division of OSHA had jurisdiction over employees of an airline's ground maintenance facility at the San Francisco International Airport, where the FAA did not assert jurisdiction over the safety of ground maintenance employees. (32 Cal.3d at pp. 765, 772.) The court interpreted Labor Code sections 6303 and 6307, which give the Division jurisdiction over every place of employment in the state unless health and safety jurisdiction "is vested by law in, and actively exercised by" a federal agency. It held that the jurisdiction of the Division is suspended only where "the other agency in the picture—like the division itself—has been specifically mandated to regulate the working environment within its aegis for the protection of the employees' health and safety." (*United Air Lines, Inc.* v. *Occupational Safety & Health Appeals Bd., supra,* 32 Cal.3d at p. 770.) The court held further that it is not enough that the other agency's safety regulations incidentally affect safety in the workplace, or that the other agency has the power or discretion to enact some regulations affecting employee safety; it was the intention of the Legislature that the exemption apply only if the safety of the workplace will be adequately protected by the other agency. (*Ibid.*)

Respondent contends that Labor Code sections 6303 and 6307 are controlling here, and that we must make the same two-pronged analysis as in *United Air Lines,* which in essence asks: (1) does the federal agency have the power to regulate the particular workplace, and (2) has the federal agency actively enforced its regulation of the particular workplace? (32 Cal.3d at p. 767.) Respondent argues that since there was almost no evidence adduced at the administrative hearing of active enforcement of the federal pipeline safety regulations, the state had the power to enforce its occupational safety and health regulations. Respondent also relies on *Troy Gold Industries, Ltd.* v. *Occupational Safety & Health Appeals Bd.* (1986) 187 Cal.App.3d 379 [231 Cal.Rptr. 861]. In *Troy Gold,* the Court of Appeal applied the

two-prong analysis to regulation of mine safety, and found that the Federal Mine Safety and Health Administration actively exercised the jurisdiction vested in it by federal law, and the Division did not have jurisdiction to cite mine operators for state safety violations. (187 Cal.App.3d at p. 383.)

Respondent's contention begs the question. The two-prong test of *United Air Lines* can be applied to determine the scope of permitted state regulation only if some state regulation is permitted in the first instance. The federal preemption statute involved in *United Air Lines* was the Federal Aviation Act, which expressly preempts only state regulation relating to in-flight safety and the use of navigable airspace. (See 49 U.S.C. § 40103.) It does not preempt the right of local governments to regulate safety on the ground. (*Bethman* v. *City of Ukiah* (1989) 216 Cal.App.3d 1395, 1406-1407 [265 Cal.Rptr. 539]; *Gustafson* v. *City of Lake Angelus* (6th Cir. 1996) 76 F.3d 778, cert. den. __ U.S. __ [117 S.Ct. 81, 136 L.Ed.2d 39].) In *Troy Gold,* the federal statute in question was the Federal Mine Safety Act, which expressly grants concurrent jurisdiction to the states to act in mining health and safety matters. (30 U.S.C. § 955.) The Court of Appeal in *Troy Gold* made it clear that a different analysis would be required if federal preemption had not been expressly limited. (*Troy Gold Industries, Ltd.* v. *Occupational Safety & Health Appeals Bd., supra,* 187 Cal.App.3d at p. 387.)

The NGPSA's express preemption provision does not limit itself or permit state regulation in specified areas, as the Federal Aviation Act and the Mine Safety Act do. (See 49 U.S.C. § 60104(c).) Standards promulgated under NGPSA cover all gas pipeline facilities and all the work done by employees with relation to them, from installation to repairs. (See 49 C.F.R., pt. 192 (1996).) Under respondent's interpretation of Labor Code sections 6303 and 6307, the state would confer jurisdiction upon itself in direct conflict with the express federal preemption, having the effect of nullifying the federal preemption statute. So interpreted, the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (*Hines* v. *Davidowitz* (1941) 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581].) Such a statute creates an actual conflict with federal law, and is preempted under the supremacy clause of the United States Constitution. (U.S. Const., art. VI, cl. 2; *Florida Avocado Growers* v. *Paul, supra,* 373 U.S. at pp. 142-143 [83 S.Ct. at pp. 1217-1218].)

We find that it was the "clear and manifest purpose of Congress" to occupy the field of interstate natural gas pipeline safety, in the broadest sense possible. (See *Medtronic, Inc.* v. *Lohr, supra,* 518 U.S. at p. __ [116

S.Ct. at p. 2250].) The state was precluded from regulating the design of equipment or its use in the operation or maintenance of interstate natural gas pipelines. Since Congress has fully occupied the field of natural gas pipeline safety, there is no room for state supplementary regulation, even if there is no conflict with any given provision. (See *Rice* v. *Santa Fe Elevator Corp.* (1947) 331 U.S. 218, 236 [67 S.Ct. 1146, 1155, 91 L.Ed. 1447].)[5]

The Division was without jurisdiction to enforce either conflicting, supplementary, or duplicative regulations, and the citation issued by it is a nullity. Because respondent had no jurisdiction over appellant, its petition for writ of mandate should have been granted.

## DISPOSITION

The judgment of the superior court is reversed, and the cause remanded to the superior court with directions to enter a new and different judgment granting the requested writ of mandate. Appellant shall recover its costs on appeal.

Lillie, P. J., and Neal, J., concurred.

A petition for a rehearing was denied October 27, 1997, and the petition of all respondents for review by the Supreme Court was denied January 28, 1998. George, J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.

---

[5]The Appeals Board found California Code of Regulations, title 8, section 3328, subdivision (a), as applied, did not conflict with any federal standard, as it did not find a federal standard describing the precise activity in which the injured workers were engaged in this case. However, California Code of Regulations, title 8, section 3328, subdivision (a) did not describe the precise activity, either, but is so broad that, depending upon its application, it could very well duplicate many of the federal pipeline safety standards.